In the Matter of Solomon E. BAILEY, Debtor.

No. X 6356.

United States District Court N. D. Alabama, S. D.

Oct. 12, 1960.

W. L. Longshore, U. S. Atty., and Fred S. Weaver, Asst. U. S. Atty., Birmingham, Ala., for petitioner.

W. M. Westbrook, Jr., Birmingham, Ala., for debtor.

LYNNE, Chief Judge.

This matter is before the Court upon the petition of the United States to review the referee's order denying priority to the Government's unsecured claim filed in a proceeding under Chapter XIII of the Bankruptcy Act, 11 U.S.C.A. § 1001 et seq., for a wage earner's plan.

The pertinent facts are these:

The debtor's original sworn petition, filed under Chapter XIII of the Bankruptcy Act, listed debts totaling $1,142. The schedules of assets listed no real property, and as personal property only $68 due as wages from his employer which the debtor claimed as exempt. Seeking a composition or extension out of his future earnings or wages, he averred that he owed debts which he was unable to pay as they matured. The petition contained no direct averment of insolvency as such.

After the first meeting of creditors, the referee regularly confirmed an extension proposal and scheduled preferences to secured creditors and a pro rata distribution to unsecured creditors. The United States was not included among these. Its claim had not been scheduled by the debtor and was unknown to the referee.

Two years later, the United States filed its claim in the amount of $200 for overpayment to the debtor of mustering out pay incident to his service in the United States Navy. The claim reflected that it was for an unsecured debt, but priority of payment was claimed "in accordance with sections 64 (a–5) and 602 of the Bankruptcy Act, as amended, 11 U.S.C.A. 104(a–5) and 1002 and sections 3466 and 3467 of the Revised Statutes, as amended, 31 U.S.C. 191 and 192."

On January 25, 1960 the referee entered an order allowing the claim and ordering that it be paid along with the original unsecured creditors. On March 31, 1960 the United States moved for an order in express terms either granting or denying its claimed priority. Upon the hearing of the motion, the United States offered in evidence the entire record in the proceedings, including records of the trustee, and rested without offering further evidence. The referee thereupon, on April 22, 1960, entered an order holding that the claim of the United States was not entitled to a priority and again ordered that the claim be paid pro rata with the original unsecured creditors. On May 2, 1960 the United States filed its petition to review the referee's order of April 22, 1960. The matter is thus before the Court upon the referee's certification of the entire file in the case, including copies of the Supervisor's ledger sheets up to June 1, 1960.

There is, at the outset, a serious question whether the Government's petition for review was filed within the ten day period allowed by Section 39, sub. c, of the Bankruptcy Act.[1] The petition for review, filed on May 2, 1960, is ostensibly based on the referee's order of April 22, 1960, which merely repeated the order of January 25, 1960, with respect to which no petition for review was filed. The earlier order could have had no meaning except that the Government's claim of priority was denied. If the Government felt aggrieved, it could and should have petitioned for review within ten days after the order of January 25, 1960.[2] Its motion for an order granting or denying "in express terms" the priority claimed, filed over two months after the first order, was clearly a delinquent effort to extend the period for review of a ruling as to which the time for review had expired. If this review did not present questions both novel and basic to the administration of wage earner's cases under Chapter XIII of the Bankruptcy Act, the Government's petition would be denied on the ground of its untimeliness alone.

---

1. 11 U.S.C.A. § 67, sub. c.

2. The petition for review in this case alleges no facts or reasons for the Court to exercise its discretion to allow an untimely review. Pfister v. Northern Illinois Finance Corp. (1942), 31 U.S. 144, 63 S.Ct. 523, 87 L.Ed. 146."

There are, however, compelling reasons for the denial of the Government's petition on its merits.

Section 659, Chapter XIII,[3] refers in subsection (6) thereof, to the order of priority of payment as provided by section 64, sub. a, of Chapter VII of the Act[4] which establishes a fifth order of priority in ordinary bankruptcy cases for "debts owing to any person, including the United States, who by the laws of the United States in [sic]. entitled to priority * * *."

Section 3466 of the Revised Statutes[5] provides:

"Whenever any person indebted to the United States is insolvent * * * the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."[6]

It is the argument of the United States that these provisions entitle its claim to priority in payment.

The argument fails to recognize the fundamental difference between ordinary bankruptcy and wage earner proceedings. Ordinary bankruptcy, governed by Chapters I through VII of the Bankruptcy Act, envisions the liquidation of a bankrupt's property for distribution to his creditors. A Chapter XIII proceeding for a wage earner's plan contemplates the payment of creditors of the petitioning debtor from his future earnings.[7] In recognition of this difference, Section 602 of Chapter XIII[8] provides that the provisions of Chapters I through VII are to apply to wage earner's cases only "insofar as they are not inconsistent or in conflict with the provisions of this chapter * * *." Provisions governing ordinary bankruptcies, if inconsistent with the new proceeding, must give way to Chapter XIII's requirements.

Section 646 of Chapter XIII[9] makes it clear that an inconsistency or conflict exists. That section makes it mandatory for a wage earner's plan to deal with unsecured debts generally. It permits dealing with secured debts severally. It clearly requires all unsecured creditors to be treated alike as a group.[10] Priority is possible only for secured creditors as opposed to unsecured creditors, and the claim of the United States in this case is admittedly unsecured.[11] There is thus such a fundamental and obvious inconsistency with the priorities section of Chapter VII governing ordinary bankruptcies that it is rendered inapplicable by Section 602.

3. 11 U.S.C.A. § 1059.

4. 11 U.S.C.A. § 104, sub. a.

5. Act March 3, 1797, ch. 20, § 5, 1 Stat. 515; Act March 2, 1799, ch. 22, § 65, 1 Stat. 676, 31 U.S.C.A. § 191.

6. The Government claim also refers to R.S. § 3467 (31 U.S.C.A. § 192) which imposes penalties on fiduciaries who disregard this priority.

7. City Nat. Bank & Trust Co. v. Oliver, 10 Cir., 1956, 230 F.2d 686, 56 A.L.R.2d 749.

8. 11 U.S.C.A. § 1002.

9. 11 U.S.C.A. § 1046.

10. " * * * The requirement that unsecured debts be dealt with 'generally' means that *all* unsecured debts must be dealt with, and they must be dealt with in the *same* way * * *. The language of § 646(1), and a comparison with Chapter XI, make clear that a plan under Chapter XIII must deal with all unsecured creditors of the debtor and must treat all in the same way. * * *" Collier on Bankrupty, 14 Ed., Vol. 9, § 28.02.

11. To quote from the Government's claim, " * * * the United States does not hold, and has not, nor has any person by its order, or for its use, had or received any security or securities for the said debt."

**50**

Section 659 has not been ignored in reaching this conclusion, nor has it been left without an effective field of application. Section 659 provides for an order of payment "In advance of distribution to creditors," which by its very terminology relates to administrative priorities as clearly distinguished from priorities between creditors.[12] As the sixth and final order of payment in wage earner cases, it directs the payment of "the debts entitled to priority, in the order of priority, as provided by subdivision (a) of section 64 of this Act." Subsection (3) of Section 64 subdivision a specifically includes "wage-earner plan" within its scope, and subsection (1) gives first priority to the costs incident to the conversion to bankruptcy of "a proceeding under any chapter of this Act". Significantly, subsection (5) of Section 64, subdivision a, under which the United States here claims priority mentions neither wage-earner cases specifically, nor does it make reference to a proceeding under any chapter of the Act.

■ Section 659(6) can only be construed in pari materia with Section 602 which renders inapplicable the provisions of Section 64(a) inconsistent with wage earner proceedings under Chapter XIII. Any other interpretation would emasculate the fundamental intent of Chapter XIII to treat all unsecured creditors equally as a group.

This is not to say that a case for priority was made out by the Government even if the proceeding had been an ordinary bankruptcy case. The view taken by the Court makes it unnecessary to consider this question or the several other grounds on which the referee based his ruling.

The facts and conclusions of law stated in this opinion are adopted by the Court as its statement of facts and conclusions of law.

It is therefore ordered, adjudged and decreed that the petition of the United States to review the aforesaid order of the referee be and the same is hereby denied.

---

12. The trustee is to make distribution of the moneys paid in by the debtor only "After payment of the items specified in the six numbered clauses of § 659. * * * Chapter XIII, unlike Chapters X, XI and XII, does not specify the creditors to whom such distribution shall be made. * * *" Collier on Bankruptcy, 14th Ed. Vol. 9, § 29.09.