**In the Matter of Olen V. SHARP, Debtor.**
**No. 26354.**

United States District Court
W. D. Missouri, W. D.
June 15, 1962.

———◆———

Southall & Southall, Kansas City, Mo., for debtor.

Robert E. Brauer, St. Louis, Mo., referee in bankruptcy.

JOHN W. OLIVER, District Judge.

This case is before this Court by petition for review of an order of the Referee dismissing proceedings instituted under Chapter XIII of the Bankruptcy Act, 11 U.S.C.A. § 1001 et seq. The question presented is whether debtor's discharge in a straight bankruptcy proceeding within a prior six year period deprives this Court of jurisdiction to confirm an extension plan presented pursuant to Chapter XIII. This case represents the third reported decision involving the precise legal question. As will be noted, the two earlier District Court opinions are divided on the question of law.

The following pertinent facts, being not "clearly erroneous" within the meaning of General Order 27, are accepted by the Court:

"Debtor's application for the confirmation of his proposed wage earner's plan was filed herein on February 23, 1962.

\* \* \* \* \* \*

"Debtor's petition contains an allegation that he desires to effect an extension of time to pay his debts out of his future earnings.

\* \* \* \* \* \*

"On January 23, 1958, debtor filed his voluntary petition in bankruptcy in the United States District Court for this District, was adjudicated a bankrupt upon said petition on that same date, and received a discharge of his dischargeable debts in said proceeding on June 17, 1958."

Debtor's petition for review challenges the validity of the Referee's dismissal of the proceeding which was based on the following conclusions of law stated by him:

"Debtor's discharge of his dischargeable debts in straight bankruptcy, under Chapters I through VII of the Bankruptcy Act, on June 17, 1958, upon his petition filed in the United States District Court for this District on January 23, 1958, precludes confirmation of his proposed plan."

The petition for review must be sustained. Judge Thurmond Clarke in In re Mahaley, (D.C.S.D.Cal.) 187 F.Supp. 229 (1960), held that a discharge within the prior six year period would not prevent the confirmation of an extension

plan sought under Chapter XIII. Judge Hill, while still a District Judge, held to the contrary in In re Bingham, (D.C. Kans.) 190 F.Supp. 219 (1960). Our Referee wrote a careful memorandum opinion in which he frankly stated his disagreement with Mahaley. We do not share our Referee's view.

We are convinced that it is a matter of Congressional concern, as distinguished from judicial concern, as to whether a new class of wage earners might be created by a contrary opinion, as intimated by Judge Hill in Bingham.

Section 656, sub. a(3) of the Bankruptcy Act (11 U.S.C.A. § 1056, sub. a(3)) provides that the court shall confirm a Chapter XIII plan if satisfied that "the debtor has not been guilty of any of the acts or failed to perform any of the duties which would be a bar to the discharge of the bankrupt".

Section 14, sub. c(5), a provision not directly included in Chapter XIII, provides that in a straight bankruptcy proceeding the court shall grant the discharge unless satisfied that the bankrupt "in a proceeding under this Act commenced within six years prior to the date of the filing of the petition in bankruptcy had been granted a discharge, or had a composition or an arrangement by way of composition or a wage earner's plan by way of composition confirmed under this Act".

It must be said—and the Referee did say it—that this Chapter XIII proceeding should be dismissed if, but only if, it must also be said that Section 14, sub. c(5) is "not inconsistent or in conflict with provisions" of Chapter XIII, as provided in Section 602 (11 U.S.C.A. § 1002) of that Chapter.[1] We do not believe that such a statement is tenable.

Mahaley held, we believe correctly, that "the purposes underlying Section 14, sub. c(5) of the Bankruptcy Act are so inconsistent with the purposes underlying relief by extension under Chapter XIII that said section is inapplicable". It further held that "the purpose of an extension under Chapter XIII is to secure for the debtor temporary freedom from attachment, garnishment and other harassment so that he may ultimately repay his obligations in full and become an active and productive member of society". That case relied extensively on In re Thompson, (D.C.W.D., Va.) 51 F.Supp. 12 (1943).

Thompson involved the reverse factual situation. It determined that a Chapter XIII proceeding in which a plan calling for an extension was confirmed within the six year period did not bar the granting of a discharge in a subsequent straight bankruptcy proceeding. That case is important because it emphasizes the idea that Congress fully understood that there was a real distinction between a "composition" and an "extension" as those words are used in the Bankruptcy Act. Thompson commented, we believe correctly, that "this distinction is emphasized through the act by the constant references in the disjunctive to composition or extensions".[2] That case held:

"It is evident that the statute intended a distinction between the terms 'composition' and 'extension'; and that the difference is between a proceeding wherein a debtor settles his indebtedness in an agreed amount less than the amount owed and a proceeding wherein he merely obtains an extension of time within which to pay in full".

That case also pointed out that the original purpose of what is now Section

---

1. Section 602 of Chapter XIII, in its pertinent portion, provides:

"The provisions of chapters I to VII, inclusive, of this Act shall, *insofar as they are not inconsistent or in conflict with the provisions of this chapter,* apply in proceedings under this Chapter * * *."

Section 14, sub. c(5), of course is to be found in Chapter I of the Act.

2. See, for examples recognizing the distinction, Sections 306(1) (11 U.S.C.A. § 706) and 307 (11 U.S.C.A. § 707) in Chapter XI, and Sections 606(6) and (7) (11 U.S.C.A. § 1006(6) and (7)) of Chapter XIII.

14, sub. c(5), enacted as it was in 1903, "was to prevent the creation of a class of habitual bankrupts, to prevent debtors from going through bankruptcy and escaping payment of their debts whenever and as frequently as they chose". That purpose and the reasons underlying that amendment to the Bankruptcy Act of 1898, Thompson correctly pointed out, can "have no application to the situation where the debtor offers to * * * pay his debts in full". The latter situation, of course, is that contemplated by the approval of an extension plan in a Chapter XIII proceeding and the inconsistency in purpose between a straight bankruptcy proceeding under Chapters I to VII, and a proceeding for approval of a wage earner's plan seeking merely an extension of time for payment under Chapter XIII is equally apparent whether the factual situation involved in Thompson is considered, or whether the factual situation here involved is under consideration.

Thompson was followed in In re Verlin, E.D.N.Y., 148 F.Supp. 660 (1957), affirmed as Fishman v. Verlin et al., 2 Cir., 255 F.2d 682 (1958). The initial extension involved in that case was under Chapter XI. Of course, Verlin, like Thompson, could be said to rest on the narrow ground that an "extension" is excluded from the language of Section 14, sub. c(5), and that therefore Section 14, sub. c(5), while not inconsistent, was not applicable under the facts. But the Court of Appeals' reliance upon legislative history in affirming at least intimated that the fundamental inconsistency between the various chapters was a consideration involved in upholding the discharge. That court thought "the distinction between extensions and compositions under § 14, sub. c(5) * * * found in the legislative history of the Chandler Act" to be "especially significant".

Thompson v. Terminal Shares, 8 Cir., 104 F.2d 1 (1939), cert. denied 308 U.S. 559, 60 S.Ct. 100, 84 L.Ed. 470, teaches that language in the Bankruptcy Act, particularly after the fundamental amendments that followed the 1929 Depression, does not always mean exactly what a literal reading might indicate. That case, involving the problem of whether powers conferred by old Section 77 were "not inconsistent" with other powers granted outside that section, quoted with approval the following from People v. Utica Ins. Co., 15 Johns., N.Y. 358, 381:

"A thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter; and a thing which is within the letter of the statute, is not within the statute, unless it be within the intention of the makers."

In like manner, the Tenth Circuit, in Rice v. Mimms, 10 Cir., 291 F.2d 823, 826, refused to place "an overly technical reliance upon the language" of the Bankruptcy Act.

The legislative history of Chapter XIII, a part of the legislation originally enacted in 1933, 1934, 1935 and 1938, establishes that what is now Chapter X, relating to corporate reorganizations; Chapter XI, relating to Arrangements; and Chapter XIII, relating to Wage Earners' Plans; and other provisions then enacted pursuant to the general constitutional power over bankruptcy, introduced a "new philosophy of rehabilitation of honest debtors" into bankruptcy procedure. See Commentary on the Chandler Act or Revision of the Bankruptcy Act, 11 U.S.C.A. preceding Section 501.

When the dollar limitation was removed from Chapter XIII by the Congress in 1959, Senate Report No. 179 of the Committee of the judiciary stated (page 1447, U.S.Code Congressional and Administrative News, 86 Cong., 1st Session 1959):

"The Bankruptcy Act, in chapter 13, provides for wage earners' plans. Wage earners' plans offer a method by which, without resorting to bankruptcy proceedings in the usual sense, a wage earner may meet the claims of creditors. Under wage

earners' plans, the debtor does not escape his obligations, but rather seeks sufficient time and a systematic method of meeting his obligations."

That report quoted with approval the report of the Committee on Bankruptcy Procedures and Administration which had been approved by the Judicial Conference in March, 1958, as follows:

"We think there can be no doubt that a procedure by which a debtor who is financially involved and unable to meet his debts as they mature, over a period of time, works out of his involvement and pays his debts in full is good for his creditors and good for him."

In re Bailey, (D.C.N.D.Ala.) 188 F. Supp. 47 (1960), noted "the fundamental difference between ordinary bankruptcy and wage earner proceedings". The former, that court correctly held, "envisions the liquidation of a bankrupt's property for distribution to his creditors"; the latter "contemplates the payment of creditors of the petitioning debtor from his future earnings". That court held that the order of priorities established for straight bankruptcy was inconsistent with the purpose and provisions of Chapter XIII within the meaning of Section 602.

We think it would do violence to the general purpose of Chapter XIII to hold that a plan to effect an extension of time to pay debts out of future earnings can not be confirmed merely because a particular debtor had been discharged in bankruptcy within a prior six year period. The debtor seeks to pay debts— not to discharge them. In that effort he should be encouraged. Such encouragement is in accord with the declared Congressional intent of Chapter XIII.

We therefore sustain the petition for review for the reason that the portion of Section 14, sub. c(5) of the Bankruptcy Act relating to a prior discharge [3] is inconsistent and in conflict with the applicable provisions of Chapter XIII; and, under Section 602, not applicable to those provisions of Chapter XIII which authorize the approval of an extension plan for the debtor.

This case is therefore remanded to the Referee for further proceedings consistent with this Memorandum and Order, and the provision of Chapter XIII of the Bankruptcy Act.

It is so ordered.

---

3. This case does not present, and we therefore do not rule, the entirely separate question of whether other portions of Section 14, sub. c may or may not be consistent with and therefore applicable to a Chapter XIII proceeding. It is clear, for example, that a debtor in a Chapter XIII proceeding who might be guilty of the acts specified in 14, sub. c(1) or 14, sub. c(2) stands on very different ground than a Chapter XIII debtor who was once discharged in a straight bankruptcy proceeding.