In the Matter of Sidney **BELKIN**, Debtor.
No. 22558.

United States District Court
W. D. Michigan, S. D.
Aug. 12, 1964.

---

3. See footnote 1, supra.

George E. Hill, U. S. Atty., Grand Rapids, Mich., for petitioner.

McShane, Bowie & Anderson and Charles F. Anderson, Grand Rapids, Mich., for respondent-debtor.

STARR, Senior District Judge.

On May 6, 1964, the United States filed petition for review of an order of the referee in bankruptcy entered April 28th. The material facts involved in this case are not in dispute and only questions of law are presented.

On March 22, 1963, Sidney Belkin filed petition in a proceeding for a wage-earner's plan under chapter XIII of the Bankruptcy Act. The proposed plan provided for the payment of the necessary costs and expenses of administration, and for the payment of secured debts in accordance with the terms of the security instruments, which were excluded from payments under the plan. The plan fur-

ther provided for payment of unsecured debts as follows:

"Unsecured creditors of the debtor shall be paid 25 per cent of their debts within 120 days from the confirmation of the plan, in full and complete payment and satisfaction of such debts."

A hearing was held and the plan was accepted by the debtor's creditors and an order was entered by the referee April 25th confirming the plan. A copy of the referee's order was sent to all creditors listed in the debtor's schedules. In his schedules the debtor did not list the United States as a creditor, but did list the Michigan National Bank as a creditor in the amount of $819 on a personal loan to the debtor on a promissory note signed by him and his wife. The bank did not file a proof of claim. However, on July 10, 1963, the United States by the Federal Housing Commissioner filed a proof of claim in the amount of $796.56 and claimed priority of payment in full under 31 U.S.C. § 191. The claim of the United States was based upon the promissory note of the debtor, Sidney Belkin, and his wife as evidence of a loan made to them by the Michigan National Bank May 7, 1962, which loan was insured under Title I of the National Housing Act, 12 U.S.C. § 1702 et seq. The Michigan National Bank had assigned its claim and the Belkin note to the United States March 21, 1963, which was the day before the debtor filed his petition.

On September 12, 1963, the referee entered an order directing the debtor and all creditors who had filed claims or who were listed in the debtor's schedules to show cause why certain claims should not be allowed as general, unsecured claims, and why certain claims should not be disallowed. The referee's order in particular directed the United States and the Federal Housing Commissioner to show cause why the government's claim for $796.56 should not be disallowed as a priority claim and allowed and paid only as a general, unsecured claim in accordance with the debtor's plan. A hearing was held on the order to show cause and

briefs were filed. In his opinion and order of April 28, 1964, the referee held that the United States was bound by the terms of the debtor's plan and therefore was entitled to receive only 25 per cent of the amount of its claim in full satisfaction thereof, and further held that the United States was entitled to priority payment of said 25 per cent of its claim.

On this petition for review the questions presented are: (1) Is the government entitled to full payment of its unsecured claim, or is it bound by the debtor's accepted and confirmed plan and therefore entitled to be paid only 25 per cent of its claim in full satisfaction thereof? (2) is the government entitled to priority payment of any part of its claim?

Chapters I through VII of the Bankruptcy Act, as amended from time to time, were in force for many years before chapter XIII providing for wage-earners' plans was enacted. As this case involves certain provisions of chapter XIII, it is well to recognize the fundamental difference between ordinary bankruptcy proceedings under chapters I through VII and wage-earner proceedings under chapter XIII. Ordinary bankruptcy proceedings contemplate the liquidation of a bankrupt's property and distribution of the proceeds among his creditors. A proceeding under chapter XIII for a wage-earner's plan contemplates the payment of the petitioning debtor's creditors from his future earnings. In recognition of this difference and to reconcile inconsistent or conflicting statutory provisions, chapter XIII, § 602, 11 U.S.C. § 1002, expressly provides that the provisions of chapters I through VII are to apply in wage-earners' proceedings under chapter XIII only *"insofar as they are not inconsistent or in conflict with the provisions of this chapter."* Therefore, it is clear that when inconsistent or in conflict, the provisions of chapters I through VII of the Bankruptcy Act must give way to the provisions of chapter XIII applying to wage-earners' plans.

The debtor's plan, confirmed by order of the referee, provided that "unsecured

creditors of the debtor shall be paid 25 per cent of their debts, * * * in full and complete payment and satisfaction of such debts." Chapter XIII, § 657 of the Bankruptcy Act, 11 U.S.C. § 1057, provides:

"Upon confirmation of a plan, the plan and its provisions *shall be binding upon the debtor and upon all creditors of the debtor,* whether or not they are affected by the plan or have accepted it or have filed their claims, and whether or not their claims have been scheduled or allowed or are allowable."

Chapter XIII, § 646, 11 U.S.C. § 1046, provides:

"A plan under this chapter—

"(1) *shall include provisions dealing with unsecured debts generally, upon any terms*;

"(2) may include provisions dealing with secured debts severally, upon any terms;

"(3) may provide for priority of payment during the period of extension as between the secured and unsecured debts affected by the plan;

"(4) shall include provisions for the submission of future earnings or wages of the debtor to the supervision and control of the court for the purpose of enforcing the plan;

"(5) shall provide that the court may from time to time during the period of extension increase or reduce the amount of any of the installment payments provided by the plan, or extend or shorten the time for any such payments, where it shall be made to appear, after hearing upon such notice as the court may designate, that the circumstances of the debtor so warrant or require;

"(6) may include provisions for the rejection of executory contracts of the debtor; and

"(7) may include any other appropriate provisions not inconsistent with this chapter."

In discussing subdivision (1) of § 646 providing that a wage-earner's plan "shall include provisions dealing with unsecured debts generally, upon any terms," 10 Collier on Bankruptcy, 14th ed., page 275, states:

"The requirement that unsecured debts be dealt with 'generally' means that *all* unsecured debts must be dealt with, and they must be dealt with in the *same* way."

Under chapter XIII, § 602 of the Bankruptcy Act any provisions of chapters I through VII of the act that are inconsistent or in conflict with the provisions of chapter XIII are not applicable in proceedings under chapter XIII. Therefore, any provisions of chapters I through VII that are inconsistent with §§ 646 and 657 of chapter XIII are not applicable in proceedings under chapter XIII. The court accordingly concludes that under § 657 the United States is bound by the provisions of the debtor's plan, and that under § 646 the unsecured debt of the United States must be dealt with in the same manner as all other unsecured debts of the debtor. It is therefore clear that as an unsecured creditor the United States is entitled to be paid only 25 per cent of its claim in full satisfaction thereof, as provided in the debtor's plan.

Having held that the United States is entitled to be paid only 25 per cent of its claim, I next turn to the question as to whether it is entitled to priority of payment of that amount. The Bankruptcy Act, chapter XIII, § 659, 11 U.S.C. § 1059, provides:

"In advance of distribution to creditors, there shall first be paid in full, out of the moneys paid in by or for the debtor, and the order of payment shall be—

"(1) the costs of the referee as specified in paragraph (2) of section 633;

"(2) the actual and necessary costs and expenses of the trustee;

"(3) an additional fee for the referees' salary and expense fund. * *

"(4) such reasonable fee to the attorney for the debtor as the court may allow; * * *

"(5) in the case of a pending bankruptcy proceeding superseded by a proceeding under this chapter, the costs, expenses, and fees of such bankruptcy proceeding; and

"(6) the debts entitled to priority, *in the order of priority, as provided by subdivision a of section 64 of this Act*."

Chapter VII, § 64 of the Bankruptcy Act, 11 U.S.C. § 104, provides in part as follows:

*"Debts which have priority*

"a. The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) (See 1962 amendment) the costs and expenses of administration (and so forth); * * (2) wages and commissions (and so forth); * * * (3) where the confirmation of an arrangement or wage-earner plan or the bankrupt's discharge has been refused, revoked, or set aside upon the objection and through the efforts and at the cost and expense of one or more creditors, * * * the reasonable costs and expenses of such creditors; * * * (4) taxes legally due and owing by the bankrupt to the United States or any State or any subdivision thereof (and so forth); * * * and (5) debts owing to any person, including the United States, who by the laws of the United States in [is] entitled to priority."

It is obvious that there is inconsistency or conflict between the provisions of chapter VII, § 64, sub. a(5) of the Bankruptcy Act, which provides for priority of payment of debts owing to the United States, and chapter XIII, § 646(1), which provides that a wage-earner's plan *"shall* include provisions dealing with unsecured debts generally, upon any terms." This inconsistency or conflict between § 64,

sub. a(5) and § 646(1) is clearly met and provided for by chapter XIII, § 602 of the act, 11 U.S.C. § 1002, dealing with wage-earners' plans, which provides in part:

"The provisions of chapters 1 to 7, inclusive, of this title shall, *insofar as they are not inconsistent or in conflict* with the provisions of this chapter, apply in proceedings under this chapter."

■  As the provisions of chapter VII, § 64, sub. a(5), are inconsistent and in conflict with the provisions of chapter XIII, § 646(1), it is clear that under § 602 hereinbefore quoted, the provisions of § 64, sub. a(5) must give way and do not apply to proceedings under chapter XIII for wage-earners' plans. This inconsistency and conflict between the provisions of § 64, sub. a(5) and § 646(1) were recognized in In re Bailey, D.C., 188 F.Supp. 47, where the court said at pages 48–50:

"This matter is before the Court upon the petition of the United States to review the referee's order denying priority to the Government's unsecured claim filed in a proceeding under Chapter XIII of the Bankruptcy Act, 11 U.S.C.A. § 1001 et seq., for a wage earner's plan  *  *

"Ordinary bankruptcy, governed by Chapters I through VII of the Bankruptcy Act, envisions the liquidation of a bankrupt's property for distribution to his creditors. A Chapter XIII proceeding for a wage earner's plan contemplates the payment of creditors of the petitioning debtor from his future earnings. In recognition of this difference, Section 602 of Chapter XIII provides that the provisions of Chapters I through VII are to apply to wage earner's cases only 'insofar as they are not inconsistent or in conflict with the provisions of this chapter * * *.' Provisions governing ordinary bankruptcies, if inconsistent with the new proceeding, must give way to Chapter XIII's requirements.

"Section 646 of Chapter XIII makes it clear that an inconsistency or conflict exists. That section makes it mandatory for a wage earner's plan to deal with unsecured debts generally. It permits dealing with secured debts severally. *It clearly requires all unsecured creditors to be treated alike as a group.* Priority is possible only for secured creditors as opposed to unsecured creditors, and the claim of the United States in this case is admittedly unsecured. There is thus such a fundamental and obvious inconsistency with the priorities section of Chapter VII governing ordinary bankruptcies that it is rendered inapplicable by Section 602.

"Section 659 has not been ignored in reaching this conclusion, nor has it been left without an effective field of application. Section 659 provides for an order of payment 'In advance of distribution to creditors,' which by its very terminology relates to administrative priorities as clearly distinguished from priorities between creditors. As the sixth and final order of payment in wage earner cases, it directs the payment of 'the debts entitled to priority, in the order of priority, as provided by subdivision (a) of section 64 of this Act.' Subsection (3) of Section 64 subdivision a specifically includes 'wage-earner plan' within its scope, and subsection (1) gives first priority to the costs incident to the conversion to bankruptcy of 'a proceeding under any chapter of this Act'. Significantly, subsection (5) of Section 64, subdivision a, under which the United States here claims priority mentions neither wage-earner cases specifically, nor does it make reference to a proceeding under any chapter of the Act.

"Section 659(6) can only be construed in pari materia with Section 602 which renders inapplicable the provisions of Section 64(a) inconsistent with wage earner proceedings under Chapter XIII. Any other interpretation would emasculate the fundamental intent of Chapter XIII to treat all unsecured creditors equally as a group."

Section 659 hereinbefore quoted provides that in advance of distribution to creditors there shall be paid in full out of the money paid in by or for the debtor, and the order of payment shall be, "(6) the debts entitled to priority, in the order of priority, as provided by subdivision a of section 64 of this Act." It is clear that this provision of § 659 must be considered, as held in In re Bailey, supra, in pari materia with § 602, which renders inapplicable in wage-earner proceedings the provisions of § 64, sub. a that are inconsistent and in conflict with the provisions of chapter XIII.

The holding in In re Bailey that under chapter XIII, § 602, the provisions of chapters I to VII of the Bankruptcy Act are not applicable to wage-earner proceedings under chapter XIII if they are inconsistent or in conflict with the provisions of that chapter, was also recognized in In re Sharp, D.C., 205 F.Supp. 786. That case, on petition for review, involved the question as to whether a debtor was entitled to proceed with a wage-earner's plan under chapter XIII where he had obtained a general discharge in bankruptcy within six years prior to the filing of his petition in the wage-earner proceeding. In concluding that the debtor could maintain his wage-earner proceeding under chapter XIII, the court said at page 789:

"We * * * sustain the petition for review for the reason that the portion of Section 14, sub. c(5) of the Bankruptcy Act relating to a prior discharge is inconsistent and in conflict with the applicable provisions of Chapter XIII; and, under Section 602, not applicable to those provisions of Chapter XIII which authorize the approval of an extension plan for the debtor."

The court's attention has been called to Small Business Administration v. Mc-

Clellan, Trustee, 364 U.S. 446, 81 S.Ct. 191, 5 L.Ed.2d 200, in which the government's claim was granted priority of payment. However, that decision was in an ordinary bankruptcy proceeding, and the court was not required to consider and did not consider the effect of the conflicting provisions of §§ 64, sub. a(5) and 646(1) in a chapter XIII proceeding.

In its proof of claim the United States asserts that under § 3466 of the Revised Statutes, 31 U.S.C. § 191, it is entitled to priority payment of its claim in full. Section 191 provides:

> "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

The debtor in the present case was indebted to the United States at the time he filed his petition in a proceeding under chapter XIII. However, many courts have held that as the Bankruptcy Act did not incorporate the priority provisions of § 191, they are not applicable in a proceeding under the Bankruptcy Act. In City of New York v. United States, 2 Cir., 283 F.2d 829, 833, the court said:

> "The government's further contention that § 3466 of the Revised Statutes, 31 U.S.C.A. § 191, gives the United States' tax claim a priority would be persuasive had the bankruptcy petition not been filed. However, the Bankruptcy Act did not incorporate the priority provisions of § 3466 and they do not apply in bankruptcy. Davis v. Pringle, 1925,

268 U.S. 315, 45 S.Ct. 549, 69 L.Ed. 974."

In United States v. Gargill, 1 Cir., 218 F.2d 556, 558, 559, the court said:

> "We shall first deal with the Government's contention that the district court was in error when it failed to apply the federal priority statute (31 U.S.C.A. § 191, R.S. § 3466) which gives the Government priority for its claims in the event of a debtor's insolvency and the commission of an act of bankruptcy. The weight of authority indicates that this statute is not applicable in proceedings in bankruptcy. 4 Collier on Bankruptcy, 264 and n. 51 (14th ed. 1954); see Adams v. O'Malley, 8 Cir., 1950, 182 F.2d 925; United States v. Sampsell, 9 Cir., 1946, 153 F.2d 731; In re Knox-Powell-Stockton Co., 9 Cir., 1939, 100 F.2d 979. It cannot be assumed that Congress was so illogical and inconsistent as to enact § 64 of the Bankruptcy Act, 11 U.S.C.A. § 104, entitling the Government only to a fourth priority insofar as its tax claims are concerned and a fifth priority as to certain other debts owed to the United States, if it did not intend that § 64 supersede, insofar as bankruptcy proceedings are concerned, the first priority given to federal claims under § 3466."

In Adams v. O'Malley, 8 Cir., 182 F.2d 925, 930, the court said: "Our conclusion is that R.S. § 3466, § 191 of Title 31 U.S. C.A., *is not, expressly or inferentially, applicable to proceedings in bankruptcy,* and that the tax liens of the County were on a parity with those of the United States."

In re Taylorcraft Aviation Corporation, 6 Cir., 168 F.2d 808, 810, the court said: "The Government concedes that § 3466, R.S., Title 31, U.S.C., § 191, which provides that in case of insolvency of any person indebted to the United States the debts due to the United States shall be first satisfied, *does not apply in bankruptcy cases.*"

In United States v. Schroeder, D.C., 204 F.Supp. 199, 201, the court recognized the limited application of the so-called priority statute, 31 U.S.C. § 191, when it said:

"Although the Priority Statute appears to apply 'whenever any person indebted to the United States is insolvent,' such is not the case. It is applicable only in the four instances specifically named: 1) the decedent's estate; 2) the voluntary assignment; 3) the attachment of the estate of an absconding, concealed, or absent debtor; 4) the commission of an act of bankruptcy."

The law appears to be well established that under R.S. § 3466, 31 U.S.C. § 191, the United States would have a claim as an unsecured creditor in the present chapter XIII proceeding, but that said section does not give priority of payment to that claim. In 3 Collier on Bankruptcy, 14th ed., page 2228, it is stated:

"If 31 U.S.C. § 191 stood alone, the federal government would be entitled thereunder to be 'first satisfied' in such distribution. But it has been uniformly held that in bankruptcy, although § 191 is the foundation of the claim of the United States, the relative priority of that claim is governed by § 64 of the Bankruptcy Act, which relegates it to the fifth priority rank."

Having hereinbefore held that the provisions of chapter VII, § 64, sub. a(5) of the Bankruptcy Act are inconsistent and in conflict with the provisions of chapter XIII, § 646(1), and therefore under § 602 are not applicable in a wage-earner proceeding, it is clear that the unsecured debt of the United States is not entitled to priority payment in the present wage-earner proceeding under chapter XIII.

In summary, for the reasons herein stated the court concludes: (1) That the United States is bound by the debtor's plan, which was accepted and confirmed, and therefore is entitled to be paid only 25 per cent of its claim in full satisfaction thereof; and (2) that the United States is not entitled to priority of payment of the 25 per cent of its claim.

The decision of the referee is affirmed as to the right of the United States to payment of only 25 per cent of its claim, and reversed as to the allowance of priority payment of said 25 per cent of its claim. The matter is remanded to the referee for further proceedings in accordance with this opinion.