In the Matter of Danilo A. **MAYORGA**,
Debtor.

**No. 20204.**

United States Court of Appeals
Ninth Circuit.

Jan. 17, 1966.

Ralph Nathanson, Oakland, Cal., for appellants.

Irving Sulmeyer, of Sulmeyer & Kupetz, Los Angeles, Cal., amicus curiæ.

Before HAMLEY, Circuit Judge, MADDEN, Judge of the Court of Claims, and MERRILL, Circuit Judge.

MADDEN, Judge.

Mayorga filed a petition in the federal District Court, pursuant to Section 622 of the Bankruptcy Act, seeking to obtain an extension under which he could pay his debts out of his future earnings. The referee in bankruptcy refused to confirm the plan presented by Mayorga for the reason that within the six years preceding the filing of his petition Mayorga had received a discharge in a prior bankruptcy proceeding. Mayorga filed a Petition for Review of the referee's refusal to confirm Mayorga's plan. The District Court affirmed the referee's order. Mayorga brought this appeal. No question is raised as to the jurisdiction of the District Court or of this court.

The Bankruptcy Act does not permit one to rid himself of his debts by going through bankruptcy every time he finds himself unable to pay his debts. Section 14(c) (5) of the Act, 11 U.S.C. § 32, provides, with regard to repeated discharges in bankruptcy:

The court shall grant the discharge unless * * * (5) in a proceeding under this Act commenced within six years prior to the date of the filing of the petition in bankruptcy

[the debtor] had been granted a discharge, or had a composition or an arrangement by way of composition or a wage earner's plan by way of composition confirmed under this Act; * * *.

■ The quoted section thus prescribes at least a six year interval not only between outright and complete discharges in bankruptcy but also between such discharges and other more complex arrangements authorized by the Act, under which a debtor is able to discharge his debts by only partially paying them, that is, by "composition" of them. Since composition results in creditors losing part of their claims, frequent discharges which accompany composition could be habit-forming in the same way that frequent outright discharges are, and they are subject to the prescribed six year interval.

In the instant case Mayorga did not petition for an outright discharge from his debts by invoking ordinary bankruptcy proceedings. He sought to make use of the "Wage Earners' Plans" proceeding authorized by chapter XIII of the Act, 11 U.S.C. §§ 1001–1086. Section 606 of the Act, 11 U.S.C. § 1006, says, in its subdivision (6) and (7):

(6) "petition" shall mean a petition filed under this chapter by a wage earner desiring to effect a plan for a composition or extension of time for the payment of his debts, or both;

(7) "plan" shall mean a plan for a composition or extension, or both, proposed in a proceeding under this chapter.

In his chapter XIII petition Mayorga did not propose a composition of his debts by partial payment, but a payment of his debts in full during a three year extension of time for paying them. During the period of extension, his earnings would have been placed within the control of the court as to their disposition and application to the payment of his debts, § 646(4). We are, then, dealing here with a plan significantly different not only from an outright ridding oneself of one's debts by discharge in bankruptcy but also from a chapter XIII plan proposing a partial ridding of them by composition.

We have quoted, earlier herein, § 14(c) (5) of the Act relating to prescribed qualifications for a discharge. In the final words of the quotation, "or a wage earner's plan *by way of composition* confirmed under this Act," the omission of the words *"or extension of time"* (italics ours) which appear in § 606(6) and (7) of the Act, hereinabove quoted, is eloquent of the distinction which Congress made between compositions and extensions. The omission was not inadvertent. In his excellent opinion in In re Thompson, 51 F.Supp. 12, 14 (W.D.Va.), Judge Paul quotes the relevant House of Representatives Committee Report as follows:

The former clause (5) was changed to include compositions, and is intended to resolve the conflict between the cases. Inasmuch as the confirmation of the composition operates as a discharge, there is no reason why it should not be so treated. It may be thought that this provision should be expanded to constitute the confirmation of an extension or plan or reorganization on objection to a subsequent discharge; but in the case of an extension it is contemplated that debts shall be paid in full.

We have, then, in § 14(c) (5) an unambiguous statement by Congress, supported, though unnecessarily, by the legislative history, that in applying the prescribed six year interval, the fact that a wage earner's plan for the extension of his debts has been confirmed by the court is no impediment to his being granted even an outright discharge in a later bankruptcy proceeding brought within six years of the date of the confirmation. In the view of Congress, then, such an extension is not a habit-forming event of the kind which the six year interval requirement is intended to proscribe.

If, as in Mayorga's case, the order of events is reversed and the outright discharge comes first and the extension later, but within the six year period, does the proposed extension become a forbidden habit-forming incident? One would not expect the Act to make such a surprising distinction. Highly respectable judicial authorities have concluded that Congress has made that distinction and has made it so unambiguously that a court cannot, by any legitimate process of interpretation, escape it. These authorities point to the language of § 656(a) (3) in chapter XIII of the Act, which says:

> The court shall confirm a plan if satisfied that
>
> \* \* \* \* \* \*
>
> (3) the debtor has not been *guilty of any of the acts* or failed to perform any of the *duties* which would be a bar to the discharge of the bankrupt. (Italics added.)

To learn what those acts and duties are we must resort to § 14 of the Act, which is applicable to all discharges in bankruptcy. Paragraph (c) of § 14 begins as follows: "The court shall grant the discharge unless the bankrupt has (1) committed an offense punishable by imprisonment as provided under title 18, United States Code, section 152." The paragraph continues with numbered items (2), (3), (4), (6) and (7), each of which numbered items recites some reprehensible conduct on the part of the bankrupt seeking the discharge. We discuss item (5) of pargraph (c) hereinafter. In paragraph (e) of § 14 are prescribed a number of duties of the nature of appearing, submitting to examination and the like which, if the bankrupt fails to perform them, will prevent his discharge.

Item (5) of paragraph (c) of § 14 has been quoted early in this opinion. It is the one which disqualifies a bankrupt for a discharge if he has been granted a discharge or certain other specifically described benefits of the bankruptcy laws within the preceding six years. Item (5) is not *in pari materia* with the other six items of paragraph (c). It describes no wrongful act on the part of the bankrupt. It merely prescribes the six year interval which must elapse between discharges.

We return now to § 656(a) (3) of chapter XIII, which is written specifically for Wage Earners' Plan proceedings. As we have seen, it says, so far as relevant here, that "the court shall confirm the plan if satisfied that \* \* \* (3) the debtor has not been guilty of any of the acts or failed to perform any of the duties which would be a bar to the discharge of the bankrupt." The words "guilty of any of the acts" would be a remarkable way of referring to one's innocently accepting a discharge in bankruptcy which the Bankruptcy Act has authorized for him. In the case of In re Goldberg, (CCA 6) 53 F.2d 454, 80 A.L.R. 399, the court interpreted the same text which is now in § 656(a) (3), and held that the "guilty of any of the acts" language applied only to the reprehensible acts described in § 14(c). The court said: "The word 'guilty' denotes intentional wrongdoing."

Our conclusion is that there is no "plain meaning" of § 656(a) (3) which forecloses judicial interpretation. On the contrary it seems to us that there is an almost plain meaning that § 656(a) (3) does not refer to § 14(c) (5). But assuming that interpretation is necessary, we refer to our discussion earlier in this opinion of the plain language of § 14(c) (5), buttressed by legislative history, which would require us to ignore the six year interval requirement if the wage earner extension had come first and the outright discharge second, and to our inability to find logic in attaching a detrimental significance to one's paying one's debts in full over an extended period, after an outright bankruptcy, which detrimental significance we would not, under the statute, be allowed to attach to this conduct if the events had occurred in the reverse order.

Section 660 of the Bankruptcy Act provides, *inter alia*, that when the wage earner has fulfilled an extension plan by paying all his debts the court shall grant him a discharge. Such a discharge is a mere formality, of course. But § 661 provides that if, at the expiration of three years after the confirmation of the plan, the debtor has not completed his payments thereunder, the court *may*, after hearing upon notice, and being satisfied that the debtor's failure was due to circumstances for which he could not justly be held accountable, discharge the debtor from all his debts provided for by the plan. The possibility of such a discharge, three years after the confirmation of a plan which, when presented, was sufficiently promising to be confirmed by the court, is not a good reason for so interpreting the statute as to forbid the confirmation of the plan in the first place.

The status of the judicial answers to the problem posed by the instant case is, to say the least, interesting. Reaching the same result which we have reached are In re Holmes, (CA 10) 309 F.2d 748; Edins v. Helzberg's Diamond Shops, Inc., (CA 10) 315 F.2d 223; Fishman v. Verlin, (CA 2) 255 F.2d 682; In re Verlin, (E.D.N.Y.) 148 F.Supp. 660; In re Thompson, (W.D.Va.) 51 F.Supp. 12, supra; In re Mahaley, (S.D. Cal.) 187 F.Supp. 229; In re Sharp, (W.D.Mo.) 205 F.Supp. 786. Reaching a contrary result are In re Perry, (CA 6) 340 F.2d 588, in which the court made no reference to its earlier decision in In re Goldberg, referred to supra; In re Jensen, (CA 7) 200 F.2d 58 (Judge Lindley dissented); In re Fontan, (S.D. Miss.) 227 F.Supp. 973; In re Nicholson, (D.C.Or.) 244 F.Supp. 773; In re Bingham, (Kan.) 190 F.Supp. 219. Not all of the relevant cases are included in the foregoing list.

We reverse the judgment of the District Court and remand the case for further proceedings consistent with this opinion.