PERRY *v.* COMMERCE LOAN CO.

No. 694.   Argued January 26, 1966.—Decided March 7, 1966.

*Robert J. Harris* argued the cause and filed a brief for petitioner.

*R. Howard Smith* argued the cause and filed a brief for respondent.

MR. JUSTICE CLARK delivered the opinion of the Court.

Perry, a furnace operator employed by Moore Lead Company, filed a petition in the District Court under Chapter XIII of the Bankruptcy Act, 52 Stat. 930 (1938), as amended, 11 U. S. C. §§ 1001–1086,[1] requesting confirmation of his plan for an extension of time within which to pay his debts out of his future wages. In his plan he proposed to pay his debts of $1,412 in 28 equal monthly installments of $60 from his wages of $265 a month. On the hearing for confirmation of the plan, however, it appeared that Perry had previously filed a petition in straight bankruptcy and obtained a discharge therein in 1959, within six years of the filing of this proceeding. On motion of the respondent, Commerce Loan Company, the referee dismissed the plan on the ground that the previous bankruptcy was a bar thereto under

---

[1] All United States Code citations herein refer to the 1964 edition.

the provisions of § 14 (c)(5) of the Act.[2] On review the District Court upheld the dismissal. The Court of Appeals affirmed. 340 F. 2d 588. We granted certiorari, 382 U. S. 889, in view of a conflict on the point among the courts of appeals.[3] We conclude that confirmations of wage-earner plans by way of extensions are not affected by § 14 (c)(5), and, therefore, reverse the judgment below.

I.

Although statutory relief for the financially distressed wage earner had been available to some extent as early as the Bankruptcy Act of 1867, 14 Stat. 517, Congress found in its study prior to the 1938 revision of the bankruptcy laws that there were no effective provisions for the complete repayment of the wage earner's debts suited to his problems. H. R. Rep. No. 1409, 75th Cong., 1st Sess., 53 (1937). For example, compositions under § 12 of the 1898 Act, 30 Stat. 549, were available to the wage earner, but the relief afforded was unsatisfactory. Section 12 proceedings, which were primarily adaptable for use by business entities, were disproportionately expensive in view of the small sums ordinarily involved in wage-earner cases; they lacked flexibility;

---

[2] 52 Stat. 850 (1938), as amended, 11 U. S. C. § 32 (c)(5): "(c) The court shall grant the discharge [in bankruptcy] unless satisfied that the bankrupt has . . . (5) in a proceeding under this title commenced within six years prior to the date of the filing of the petition in bankruptcy . . . been granted a discharge, or had a composition or an arrangement by way of composition or a wage earner's plan by way of composition confirmed under this title . . . ." 11 U. S. C. § 32 (c)(5).

[3] Compare *In re Schlageter,* 319 F. 2d 821 (C. A. 3d Cir. 1963), and *Perry* v. *Commerce Loan Co.,* 340 F. 2d 588, with *Edins* v. *Helzberg's Diamond Shops, Inc.,* 315 F. 2d 223 (C. A. 10th Cir. 1963), and *In re Mahaley,* 187 F. Supp. 229 (D. C. S. D. Cal. 1960). See also *In re Mayorga,* 355 F. 2d 89 (C. A. 9th Cir. 1966).

and they did not provide for jurisdiction of the court subsequent to confirmation. Other provisions of the Act had similar disadvantages. Faced with inadequate relief under the federal bankruptcy laws and often with little protection from creditors under state law, the only course usually open to the wage-earning debtor was straight bankruptcy. In such proceedings, everyone lost—the creditors by receiving a mere fraction of their claims, the debtor by bearing thereafter the stigma of having been adjudged a bankrupt. In designing a remedy for the dilemma facing a debtor seeking to repay, rather than avoid, his obligations, the Congress settled upon the wage-earner extension-of-time procedures of Chapter XIII. The chapter gave—and was intended to give— to the wage earner a reasonable opportunity to arrange installment payments to be made out of his future earnings. Congress clearly intended to encourage wage earners to pay their debts in full, rather than to go into straight bankruptcy or composition, by offering two inducements: (1) avoidance of an adjudication of bankruptcy with its attendant stigma; and, at the same time, (2) temporary freedom during the extension from garnishments, attachments and other harassment by creditors. H. R. Rep. No. 1409, 75th Cong., 1st Sess., at 52–55.

History demonstrates that extension plans under Chapter XIII are fulfilling the purposes intended. The records of the Administrative Office of the United States Courts show that over the past 20 years more than 20% of all proceedings filed under the Bankruptcy Act by wage earners have been for plans under Chapter XIII, the overwhelming majority of these being for extension plans.[4] Since many wage earners who go into bank-

---

[4] Chapter XIII also provides for wage-earner plans by way of composition. Compositions under that chapter, however, are almost insignificant in the operation of wage-earner plans because most

ruptcy do not proceed under Chapter XIII because they are unemployed (and consequently have no earnings to use for extension arrangements), have an inextricably large indebtedness, or are simply unaware of the existence of an alternative to straight bankruptcy, the 20% figure is even more significant. Moreover, large sums of money are annually returned to creditors under extension plans, the current rate being well over $26,000,000. As wage earners ordinarily have little or no assets available for distribution in straight bankruptcy, these sums represent settlements which the debtors would otherwise be unable to effect and the creditors unable to obtain. See Note, The Wage Earner Plan—A Superior Alternative to Straight Bankruptcy, 9 Utah L. Rev. 730 (1965); Allgood, Operation of the Wage Earners' Plan in the Northern District of Alabama, 14 Rutgers L. Rev. 578 (1960).

In light of the proven advantages of extension plans, the Congress has re-expressed its legislative purpose in amendments to Chapter XIII adopted since the original enactment. A report to the House of Representatives expresses it in these words:

"[C]hapter XIII provides a highly desirable method for dealing with the financial difficulties of individuals. It creates an equitable and feasible way for the honest and conscientious debtor to pay off his debts rather than having them discharged in bankruptcy. The power of the court to change the amount and maturity of installment payments without affecting the aggregate amount of such pay-

creditors will not give the necessary approval. The latest published statistics show that 95% of the funds paid to creditors under Chapter XIII proceedings derive from extensions rather than compositions. Administrative Office of the United States Courts, Tables of Bankruptcy Statistics, Table F 11 (1964) (by computation).

ments makes chapter XIII particularly applicable to the present-day financial problems generated by heavy installment buying." H. R. Rep. No. 193, 86th Cong., 1st Sess., 2 (1959).

And similarly, the Senate report states:

"We think there can be no doubt . . . that a procedure by which a debtor who is financially involved and unable to meet his debts as they mature, over a period of time, works out of his involvement and pays his debts in full is good for his creditors and good for him." S. Rep. No. 179, 86th Cong., 1st Sess., 2 (1959).

It is with this underlying policy in mind that we turn to a consideration of the problem posed here, *i. e.*, whether confirmation of an extension plan is barred by a discharge in bankruptcy obtained within the previous six years.

## II.

Chapter XIII requires the confirmation of a wage-earner extension plan if "the debtor has not been guilty of any of the acts or failed to perform any of the duties which would be a bar to the discharge of the bankrupt . . . ." § 656 (a)(3). And Chapter III commands that a discharge of a bankrupt shall be granted unless the court is satisfied that the bankrupt has "within six years prior to the date of the filing of the petition in bankruptcy . . . been granted a discharge, or had a composition or an arrangement by way of composition or a wage earner's plan by way of composition confirmed under this Act . . . ." § 14 (c)(5). The "discharge" of a debtor under a wage-earner plan shall issue after compliance with the provisions of the confirmed plan, § 660, c. XIII, 11 U. S. C. § 1060. If at the expiration of three years from the date of confirmation of the plan

the debtor has not completed his payments in accordance with his plan the court may, after notice and hearing, discharge the debts and liabilities dischargeable under the plan, *provided* the court is satisfied that the debtor's failure to make all of his payments "was due to circumstances for which he could not be justly held accountable." § 661, c. XIII, 11 U. S. C. § 1061. And finally, § 602, of Chapter XIII [5] declares that the provisions of Chapters I through VII of the Bankruptcy Act, insofar as they are not inconsistent or in conflict with the provisions of Chapter XIII, apply in proceedings thereunder.

We should note at the outset that in his present application for relief Perry did not file a straight, voluntary bankruptcy action in the District Court, nor "a composition or an arrangement by way of composition or a wage earner's plan by way of composition." He proposed to pay all his debts, secured and unsecured, and sought only an extension of time—28 months—in which to pay them in equal installments from his future wages. Ordinarily, a wage earner seeking to obtain the benefits of extension proceedings under Chapter XIII need only file a plan that meets the approval of the majority of his creditors, § 652, 11 U. S. C. § 1052, and is confirmed by the court; whereupon the plan becomes binding, § 657, 11 U. S. C. § 1057, and the appointed trustee commences collecting and disbursing to the creditors the periodic payments provided under the plan. Extension plans, therefore, differ materially from straight bankruptcy, arrangements under Chapters XI and XII, and wage-earner plans by way of composition, all of which contemplate only a partial payment of the wage earner's debts. Indeed, under an extension plan, · the wage earner who makes the required payments will

---

[5] 11 U. S. C. § 1002: "The provisions of chapters 1–7 of this title shall, insofar as they are not inconsistent or in conflict with the provisions of this chapter, apply in proceedings under this chapter . . . ."

have paid his debts in full and will not need a discharge, even though the Act provides for a formal one. § 660.

In view of these considerations and the purposes of Chapter XIII as outlined above, we do not believe that the Congress intended to apply the six-year bar of § 14 (c)(5) to the confirmation of wage-earner extension plans. The six-year bar was enacted 35 years prior to the adoption of Chapter XIII, 32 Stat. 797 (1903), at a time when no relief corresponding to extension plans existed under the Bankruptcy Act. The unmistakable purpose of the six-year provision was to prevent the creation of a class of habitual bankrupts—debtors who might repeatedly escape their obligations as frequently as they chose by going through repeated bankruptcy. See H. R. Rep. No. 1698, 57th Cong., 1st Sess., 2 (1902); *In re Thompson,* 51 F. Supp. 12, 13 (1943). But an extension plan has no escape hatch for debtors, it is "a method by which, without resorting to bankruptcy proceedings in the usual sense, a wage earner may meet the claims of creditors." S. Rep. No. 179, 86th Cong., 1st Sess., 2 (1959). To apply the six-year bar at the time of ruling on the confirmation of an extension plan would be both illogical and in head-on collision with the congressional purpose as announced in the adoption and design of extension plans under Chapter XIII.[6] Even if a literal reading of these provisions suggested the application of § 14 (c)(5) to extension plans, we would have little hesitation in construing the Act to give effect to the clear

---

[6] Such a collision undoubtedly affects the functioning of the Act. The Administrative Office of the United States Courts reports that a "pronounced drop in Chapter XIII filings" has been noted in the districts in the Sixth Circuit as a result of the holding in *Perry.* Administrative Office of the United States Courts, Memorandum for the Committee on Bankruptcy Administration of the Judicial Conference of the United States, Report on the Use of Chapter XIII, p. 2 (June 22, 1965).

policy underlying Chapter XIII. As was said in *United States* v. *American Trucking Assns.*, 310 U. S. 534, 543 (1940):

> "There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words."

But such a literal reading is not apparent in this case. Section 656.(a)(3) does not, on its face, state that a court may confirm an extension plan only if the debtor is eligible for a discharge in bankruptcy. Rather, the language of the section speaks, ambiguously, of "guilty" acts and unfulfilled duties. There is, of course, no unfulfilled duty involved in § 14 (c)(5). Moreover, a prior bankruptcy is hardly a "guilty" act within the usual meaning of that word, and its use as a reference to § 14 (c)(5) is strained indeed. In fact, the legislative history of § 14 (c) lends some support to a view that a prior discharge is not a "guilty" act. In 1903, when the forerunners of subdivisions (3) through (6) were originally added to § 14 (c), the House report stated:

> "This amendment also provides four additional grounds for refusing a discharge in bankruptcy: (1) Obtaining property on credit on materially false statements; (2) making a fraudulent transfer of

property; (3) having been granted or denied a discharge in bankruptcy within six years, and (4) having refused to obey the lawful orders of the court or having refused to answer material questions approved by the court. *No person who has been guilty of any of these fraudulent acts should be discharged, and a person who has refused to obey the order of the court ought not to be discharged, and it is quite clear that no person should have the benefit of the act as a voluntary bankrupt oftener than once in six years.*" H. R. Rep. No. 1698, 57th Cong., 1st Sess., 2 (1902). (Italics added.)

This language might be construed to set apart acts which are criminal or reprehensible in nature and to consider a prior bankruptcy to be something other than a "guilty" act. But we need not, and do not, go so far as to place this interpretation on the words "guilty acts." It suffices that we find in them sufficient ambiguity to impel recourse to the legislative purposes, outlined above, underlying § 14 (c)(5). And while the identical language of § 656 (a)(3) has been a part of the Bankruptcy Act since 1898, as a restriction to confirmation of compositions under what is now § 366 (3), 52 Stat. 911, as amended, 11 U. S. C. § 766 (3) and § 472 (3), 52 Stat. 923, as amended, 11 U. S. C. § 872 (3), there is no indication that its enactment in Chapter XIII was intended to bar confirmation of wage-earner extensions. Indeed, it would seem that the absence of any legislative history bearing on the adoption of this provision in Chapter XIII indicates that its inclusion was a legislative oversight,[7] at least insofar as it bears on wage-earners' extension plans.

---

[7] This is not the only example of drafting oversights in the Act. Although § 14 (c)(5) was amended in 1938 to include a reference to wage-earner compositions, the provision in that section relating

This oversight is, of course, cured by the provisions of § 602, which further buttress our conclusion. That section directs that the provisions of Chapters I through VII, which include § 14 (c)(5), are incorporated into Chapter XIII only "insofar as they are not inconsistent or in conflict with the provisions of this chapter." The rationale of § 14 (c)(5)—the prevention of recurrent avoidance of debts—is so inconsistent with the aims of extension plans as to fall squarely within the exception of § 602.

It is claimed, however, that § 686 (5) of Chapter XIII, 11 U. S. C. § 1086 (5), indicates a contrary result. We think not. This provision, in setting the effective date of the chapter, provides that confirmations thereunder "shall not be refused because of a discharge granted or a composition confirmed prior to the effective date of this amendatory Act." It must be remembered that extension-plan relief of Chapter XIII was novel to the law of bankruptcy. However, both compositions and straight bankruptcies were old on the books. The Congress, we believe, was only making certain, insofar as extensions were concerned, that the old procedures would not affect the new. This would be consistent with the purpose of the Congress not to make § 14 (c)(5) applicable to confirmations in extension-plan cases. Rather than making an illogical exemption from the six-year bar, given in cases where a discharge had been received before—but not after—the new Act, § 686 (5) merely gave expansive effect to the congressional purpose by making it clear that the remedy afforded be available retroactively as well as prospectively.

We emphasize that our construction of the Act does not preclude application of § 14 (c)(5) to confirmations

---

to confirmation of a composition was not deleted even though § 12 of the 1898 Act, 30 Stat. 549, under which such a composition might have been confirmed, was repealed in the same enactment.

of general arrangements under Chapter XI or to real property arrangements under Chapter XII. It is true that restrictions identical in phrasing to § 656 (a)(3) appear both in Chapter XI, § 366 (3), and in Chapter XII, § 472 (3). The relief afforded in those chapters, however, represents a wholly different statutory scheme from wage-earners' extensions, and the restrictive provisions are not, therefore, in *pari materia*. Sections 366 (3) and 472 (3) neither impart to nor receive from § 656 (a)(3) a meaningful effect. Nor does our construction imply an immunity from the six-year bar to those seeking confirmation of wage-earner compositions. A composition under Chapter XIII, unlike an extension, is closely akin to straight bankruptcy and to proceedings under Chapters XI and XII, for under such a plan the debtor is discharged from his debts and claims of the creditors are only partially paid. *In re Jensen,* 200 F. 2d 58 (1952), cert. denied, 345 U. S. 926 (1953), but see *In re Goldberg,* 53 F. 2d 454 (1931). It is both logical and consistent with the underlying purposes of § 14 (c)(5) that confirmation of wage-earner compositions be barred by prior bankruptcy, since repeated use of such plans would, in effect, provide an opportunity for abuse of the Act.

It has been argued that extension plans do not completely avoid the possibility of adjusting the wage earner's debts. It is true that § 660 provides for discharge after compliance with the provisions of a Chapter XIII plan. While this section applies to wage-earner compositions as well as to extensions, a "discharge" thereunder has a wholly different impact where an extension is involved. In the latter case a discharge is little more than a mere formality. It is also claimed that § 661 presents a somewhat more troublesome objection. That section as we have noted may allow a wage earner to obtain a release from all dischargeable debts if, after notice and hearing, the court is satisfied that the failure

of the debtor to comply with the plan was due to circumstances for which he could not be held justly accountable. However, we see no serious problems in this section. First, experience has shown that almost all plans approved under the Act envision repayment within three years. The problem, therefore, is not likely to arise. Second, there are adequate provisions for notice and hearing prior to a discharge under § 661. Objecting creditors may raise § 14 (c)(5) as a bar to relief if and when the debtor seeks such relief. A request for relief under § 661 would, in effect, constitute an attempt to transpose an extension plan into a composition, and a grant of relief thereunder would, at that time, be tantamount to a confirmation of a composition. The six-year bar would, therefore, be operative in such a situation. In view of this, as well as the power of the court to make certain that the provisions of the chapter are not abused, we see no reason to allow this section alone to destroy the beneficial purposes of enactment.[8]

For the foregoing reasons, we conclude that petitioner's plan should have been confirmed.

*Reversed and remanded.*

MR. JUSTICE HARLAN, dissenting.

The result reached by the Court may well be desirable, but in my opinion it is one that cannot be attained under

---

[8] We note that the National Bankruptcy Conference has proposed amendments to the Act which are intended to clarify the interrelationship of §§ 14 (c)(5), 656 (a)(3), and 661. The proposed clarification is in accord with our construction of the Act. See H. R. 20, 89th Cong., 1st Sess. (1965). The Judicial Conference, upon request of the Congress, has submitted its views approving the bill. Letter from the Director of the Administrative Office of the United States Courts to the Chairman of the Committee on the Judiciary, House of Representatives (September 29, 1965). See also Report of the Proceedings of the Judicial Conference of the United States, at 68 (September 22–23, 1965).

the present statute within the proper limits of the judicial function.

Chapter XIII of the Bankruptcy Act establishes procedures for the relief of wage earners who are unable to meet their debts as they mature. Two types of procedures are made available: extension plans under which the wage earner's debts are intended to be paid off in full over a period of time, and composition plans under which only a percentage of debts are recoverable. Referring to both types of plans, § 656 of the Bankruptcy Act, 11 U. S. C. § 1056 (1964 ed.), provides that "a plan" shall not be confirmed if the debtor has "been guilty of any of the acts or failed to perform any of the duties which would be a bar to the discharge of the bankrupt . . . ." To ascertain what would be a bar to the discharge of a bankrupt one must turn to § 14 (c), 11 U. S. C. § 32 (c) (1964 ed.), which provides, among other things, that no discharge may be granted if the bankrupt has been granted a previous discharge within six years. § 14 (c)(5). It is undisputed that petitioner here was so discharged, and there is no question but that he would have been refused another discharge in bankruptcy at the time he applied for this extension plan. The statutory scheme thus plainly seems to bar him from obtaining Chapter XIII relief as well.

The process by which the Court has undertaken to release the debtor from the impact of these straightforward statutory provisions seems to me wholly unavailing. The Court's major argument is built upon its reading of the word "guilty" in § 656 (a)(3). As already noted that section denies confirmation to an extension plan if the debtor has been "guilty" of any act that would bar a discharge in bankruptcy. The argument is that since receiving a prior discharge is neither unlawful nor morally reprehensible one cannot be "guilty" of it, and hence that the six-year "discharge" provision cannot be a bar to a Chapter XIII extension plan.

This argument presupposes that the word "guilty" was intentionally used in § 656 in a discriminating sense, that is, to distinguish among those acts catalogued in § 14 (c) which under § 656 would bar confirmation of an extension plan. The fact of the matter is, however, that when Congress in 1938 enacted Chapter XIII, 52 Stat. 930–938, it took as its model the form and language of the prior bankruptcy act, more specifically § 12d, 30 Stat. 550, dealing with compositions.[1] The "guilty" phrase was appropriate in that 1898 statute because at that time the only bars to a discharge in the predecessor of § 14 (c) were offenses punishable by imprisonment or fraudulent concealment. Section 14b, 30 Stat. 550. In 1903, Congress amended § 14b to include the six-year bar, 32 Stat. 797, and over the years other grounds for refusing confirmation have been added to that section. But the word "guilty" was never changed, and has obviously remained in several chapters of the Act merely as a shorthand way of referring back to those items that preclude the granting of a discharge. Thus, Chapter XI of the Bankruptcy Act, which deals with arrangements, has almost an exact duplicate of § 656 (a)(3) containing the same "guilty" phraseology. § 366 (3), 11 U. S. C. § 766 (3) (1964 ed.). Chapter XII, which deals with real property arrangements, contains a similar provision. § 472 (3), 11 U. S. C. § 872 (3) (1964 ed.). And of course Chapter XIII, dealing with *both* compositions and extensions for wage earners, uses this language. These parallel provisions all derive from the same section framed in 1898.

This history and this parallelism indubitably demonstrate two things: first, that the Congress did not devise

---

[1] "The judge shall confirm a composition if satisfied that (1) it is for the best interests of the creditors; (2) the bankrupt has not been guilty of any of the acts or failed to perform any of the duties which would be a bar to his discharge . . . ." § 12d, 30 Stat. 550.

the "guilty" terminology in 1938 as a means of making a subtle distinction between the morally reprehensible bars to bankruptcy contained in § 14 (c) and the other bars there enumerated; and second, that the word "guilty" means the same thing when applied to general arrangements in § 366, to real property arrangements in § 472, and to compositions and extensions in § 656. If the word "guilty" excludes the six-year bar for extension plans, it is impossible to see what sort of statutory interpretative sleight of hand would save it for general arrangements, real property arrangements, and wage-earner composition plans. Moreover, it seems already accepted that as applied to Chapter XI arrangements, the "guilty" provision does refer back to the six-year bar. See *In re Jensen,* 200 F. 2d 58; 9 Collier, Bankruptcy ¶ 9.19, at 310–311 (14th ed. 1964); Kennedy, Hospitality for Repeaters Under the Bankruptcy Act, 68 Com. L. J. 117, 119–120 (1963). The same would appear to be true of the meaning of "guilty" in Chapter XII. See 9 Collier, *supra,* ¶ 9.07, at 1146. And the Court in its present opinion appears to concede that when applied to compositions, § 656 is somehow transformed to include the six-year bar.

In short, construing "guilty" to refer only to "reprehensible" aspects of § 14 (c) has no basis in legislative history, and requires a strained attempt to distinguish other applications of the identical section and of parallel sections which concededly are applied more generally. Because of its ramifications, this construction may do serious harm to the administration of Chapter XIII compositions, Chapter XII real property arrangements, and Chapter XI arrangements.

The Court also advances another argument in support of its conclusion that confirmation of this extension plan was not barred by virtue of §§ 656 and 14 (c). This argument rests essentially on § 602 of the Bankruptcy

Act, 11 U. S. C. § 1002 (1964 ed.). Section 602 provides that the provisions of Chapters I through VII shall apply to Chapter XIII "insofar as they are not inconsistent or in conflict with the provisions of this chapter . . . ." It seems to be said that the six-year bar is inconsistent with the provisions of Chapter XIII because the extension plan is designed to give wage earners relief, and the six-year bar would preclude some such people from receiving that relief without good reason.

This argument likewise does not withstand analysis. To be sure the six-year bar makes it impossible for certain wage earners to get relief by way of extension plans, but so do all the other restrictions on this form of relief. Nobody would suggest that it is "inconsistent" with Chapter XIII to withhold extension-plan relief from those who engage in fraud on the ground that such a restriction cuts down the number of people who can take advantage of Chapter XIII. Section 656 clearly does establish restrictions on the class of people to whom relief is available; the question before us is whether the six-year bar is such a limitation; citation of § 602 is conclusory only, and makes no positive contribution to a meaningful analysis.

My conclusion that the statute should be read literally to preclude the confirmation of an extension plan if the applicant has been granted a discharge within the previous six years is reinforced by § 686 (5) of Chapter XIII, 11 U. S. C. § 1086 (5) (1964 ed.). Section 686 (5) in its entirety declares that "confirmation of a plan under this chapter shall not be refused because of a discharge granted or a composition confirmed prior to the effective date of this amendatory Act." The inclusion of this provision indicates quite clearly that Congress did believe that a prior discharge would be a bar to a Chapter XIII plan, and that it decided to remove that restriction only for discharges granted *before* September 22, 1938, the

effective date of the statute in question.  See 10 Collier, *supra*, ¶ 33.05, at 477.  Such a provision is perfectly understandable.  Before the enactment of the extension-plan amendment, wage earners who sought a bankruptcy remedy could obtain only a discharge through straight bankruptcy or composition.  There would be no reason to preclude wage earners who availed themselves of such relief prior to September 1938 from obtaining a more favorable extension plan subsequently.  On the other hand, after enactment of Chapter XIII, wage earners would have the opportunity to apply for an extension plan.  It is not difficult to understand why Congress should have refused to permit wage earners who chose a discharge in bankruptcy rather than an extension plan a second opportunity, within six years, to receive statutory relief.  I am frank to say that I am unable to perceive the basis for the Court's contrary explanation of this provision.

The short of the matter is that the Court's arguments do not support the conclusion it reaches.  The conclusion is of course supportable as a legislative judgment, even though arguments can be made for both sides.  Thus, it might be argued for the six-year bar in a Chapter XIII context somewhat as follows: the wage-earner extension plan is a new and very advantageous procedure for the debtor, but it is a burden on the courts.  It is also a constraint on creditors who will be delayed in collecting, will be precluded from garnishing, and may not receive full repayment if the debtor obtains a discharge under § 661 of the Act, 11 U. S. C. § 1061 (1964 ed.).  It is therefore reasonable to limit the availability of this kind of relief to those wage earners who have not had the advantage of a discharge in bankruptcy in the previous six years.  Furthermore, it is certainly arguable that the six-year bar encourages wage earners to make use of the Chapter XIII procedure.  With the prior-discharge bar eliminated, a

debtor might eschew an extension plan and decide instead to go through straight bankruptcy first, waiting a few months until the going once again "gets tough" to take advantage of the extension plan.

I venture considerations such as these not as overcoming the countervailing ones relied on by the Court, and heretofore espoused by others,[2] but simply to point up the fact that this is not one of those cases where seemingly straightforward statutory language must yield its literal meaning to a contrary congressional intent. What we have here are but two contrasting legislative policies, wherein the Court's duty is to take the statute as it is presently plainly written.

I would affirm the judgment of the Court of Appeals.

---

[2] See the proposed amendments of the Bankruptcy Act by the National Bankruptcy Conference, note 8, *ante*, p. 404; Kennedy, Hospitality for Repeaters Under the Bankruptcy Act, 68 Com. L. J. 117 (1963).