In re Robert L. HUBBARD and Gwen Hubbard, Debtors.

**Bankruptcy No. 680–07121.**

United States Bankruptcy Court,
D. Oregon.

April 8, 1981.

Eric Haws, Eugene, Or., for debtor.

## OPINION

C. E. LUCKEY, Bankruptcy Judge.

This is a case in which the debtors have previously been discharged in bankruptcy within six years and seek confirmation of a Chapter 13 plan which provides for composition rather than only extension of the debts.

Under the ruling of the U.S. Supreme Court in *Perry v. Commerce Loan Co.*, 383 U.S. 392, 86 S.Ct. 852, 15 L.Ed.2d 827 (1966), extension would have been permissible, but under the limitations of § 14(c)(5) of the former Bankruptcy Act, not composition.

The case here before the Court was filed under the provisions of the new Code.

It would do no good here to restate the chaotic condition of the case law as to what constitutes good faith which has been well summarized in *In re Hurd*, 4 B.R. 551, 559 (Bkrtcy.W.D.Mich.1980).

If it was the intent of Congress to depart from the revered doctrine that the government of the United States is a government of laws and not of men, it appears that it has been imminently successful. "Good faith" has been given a variety of judicial construction rarely paralleled in jurisprudence. Thus, it appears incumbent upon one more concept to see daylight if for this writer the bouncing concepts do not bruise the chancellor's foot.

Repeated frequent (within six year) Chapter 7 liquidations are prevented by the provisions of § 727(a)(8) and (9), as are Chapter 7 liquidations following Chapter 13 proceedings, absent certain hardship findings.

Section 103 of the Bankruptcy Code, however, makes § 727 inapplicable to Chapter 13 cases.

Can the Congress have truly intended to abolish a long policy against successive discharges within six years by the allowable use of the simple vehicle of the choice of Chapter 13 without full or substantial payment? Can Congress truly by excising the effect of the six year bar provision of § 727 on Chapter 13, retaining a trade-off of a necessary finding of the debtor's good faith, have intended to create a Bankruptcy Court with license to approve plans inconsistent with legislative and judicial history, and the proud national philosophy that ours is a government of laws and not of men by creating a court of pontificating jurists employing the equitable good faith doctrine based on the length of the chancellor's foot?

A careful examination of the legislative history and the Code itself says no to these questions.

Section 1325 of the Bankruptcy Code provides for the standards for confirmation of a plan, including a finding by the Court that the plan has been proposed in good faith and not by any means forbidden by law. There is no explicit provision relating to previous cases or discharges but there are safeguards or standards to be found.

Under the Code, unsecured creditors need not approve the plan for it to be confirmed. The Court is however, under § 1324, obliged to hold a hearing, after notice, on confirmation, at which a party in interest may object to confirmation of the plan. It stretches credulity to suggest that such right to objection is meaningless and not entitled to full consideration. In addition, under § 1307 a party in interest may request conversion of the case to Chapter 7, or dismissal for cause, including seven listed causes. However, the listed causes are not exclusive because § 102(3) of the Code provides that "including" is not a limiting word.

Sections 622 and 666 of the Bankruptcy Act preceding the Bankruptcy Code limited the Court to dismissal of an unconfirmed or aborted plan absent consent of the debtor. There was nonconsensual conversion provision.

The new Code, apparently as a trade-off for eliminating the six year bar to composition plans has invested the Court with power to convert an unconfirmed plan on request of a party in interest to a Chapter 7. This is consistent with the philosophy of the Code that creditors are to look out for their own interests instead of relying upon a court-administered program, dominant also in the new Chapter 11. This is fitting in the new Chapter 13 which broadens the discharge potential and the nature of the eligible debtors who may utilize Chapter 13.

Should a debtor propose less than a 100% repayment plan after a previous discharge within six years, a creditor may well urge under appropriate circumstances that the plan is to frustrate the six year bar, and seek conversion to a Chapter 7 wherein the six year bar would apply to prevent discharge. See, e. g., *In re DeSimone*, 6 B.R. 89 (Bkrtcy.S.D.N.Y.1980); *In re Terry*, 630 F.2d 634, 636 at note 5 (8th Cir. 1980), showing that the Congress intended Chapter 13 to be a plan to repay.

The policy considerations which existed at the time the *Perry* case was decided are still valid. The goal of Congress in promulgating Chapter 13 of the Code is evidenced in the House Report, which states:

"The purpose of chapter 13 is to enable an individual, under court supervision and protection, to develop and perform under a plan for the repayment of his debts over an extended period." (H.R.Rep.No. 95–595, 95th Cong., 1st Sess., 118 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6079), and

"In the consumer area, proposed chapter 13 encourages more debtors to repay their debts over an extended period rather than to opt for straight bankruptcy liquidation and discharge." (Id. at 5 U.S. Code Cong. & Admin.News 1978, p. 5966).

The intention of Congress to encourage full repayment plans is evidenced by § 727(a)(9) of the Bankruptcy Code, about which Senate Report No. 95–989, 95th Cong., 2d Sess., 13, U.S.Code Cong. & Admin.News 1978, p. 5799 (1978) states:

"As in current law, 100 percent payment plans will be encouraged by the limitation on availability of a subsequent discharge in § 727(a)(8) [sic]. . . . *It is also necessary to prevent chapter 13 plans from turning into mere offers of composition plans under which payments would equal only the non-exempt assets of the debtor.*" (Emphasis added).

Congress intended Chapter 13 to be a plan to repay. See, also, the well-reasoned opinion of Judge Flowers in *Matter of Cook*, 3 B.R. 480 (Bkrtcy.S.D.W.Va.1980). Further support of this concept is found in the language of § 1328(b) and (c). Section 1328(c) restricts the dischargeability allowable in cases of plans uncompleted because of hardship and invokes the dischargeability provisions of § 523(a) rather than the broadened discharge under § 1328(a) applicable to a completed plan limiting nondischargeability in a completed plan only to alimony and support and long range obligations.

Can it rationally be opined that a plan not calling for full or substantial payment over the objection of creditors after a previous discharge within six years may be confirmed, when even the uncompleted plan in a hardship case will reinstate creditors' rights to challenge dischargeability of debts nondischargeable under § 523(a)? The question is obviously rhetorical.

In this case no creditors appeared to object to the plan, which is a 70% composition. There were no requests for conversion. The case is a hardship case, as most insolvencies are, but most obligations herein are medical. Upon completion of this plan as filed, the debtors would apparently be eligible for another § 727(a)(9) filing if hardship be found.

Because there was no request by creditors to be heard, or objection or request for conversion or dismissal, and based on the equity of the debtors' position and substantial proposed payment (70%), the plan may be confirmed upon report by the trustee

that the payments to be made under the plan will provide funds for the represented composition and statutory satisfaction of any priority claims.