In re Richard SPADA, a/k/a Spada Realty, Debtor.

CREDITORS' COMMITTEE, Plaintiff,

v.

Joseph v. SPADA, Sr.; Donald Griffin; Ken Maula; Paul R. Budick; Stephanie Budick; First Eastern Bank, N.A.; United Penn Bank, Defendants.

Bankruptcy No. 5-82-00416.
Adv. No. 5-85-0013.

United States Bankruptcy Court, M.D. Pennsylvania.

Oct. 14, 1988.

---

Richard Spada, pro se.

John J. Thomas, Wilkes–Barre, Pa., for Joseph Spada, Sr.

Marshall E. Anders, Stroudsburg, Pa., for Griffin and Maula.

James F. Geddes, Jr., Wilkes–Barre, Pa., for Budick and First Eastern.

Ronald V. Santora, Wilkes–Barre, Pa., for United Penn Bank.

William H. Robinson, Jr., Stroudsburg, Pa., for Creditors' Committee.

## OPINION AND ORDER

THOMAS C. GIBBONS, Bankruptcy Judge:

Creditors' Committee (hereinafter "Plaintiff") commenced this proceeding to set aside alleged preferential and fraudulent transfers and to recover property or its value. The count against defendant, Joseph V. Spada, Sr. (hereinafter "Spada") was settled by Stipulation and, consequently, this Court will discuss Spada's involvement only to the extent that it is pertinent to the facts relating to the other defendants in this case. Additionally, the only allegation of fraud made concerned the count against Spada. Consequently, this opinion will not discuss the fraudulent conveyance provisions of the Code. For the reasons provided herein, we find that the plaintiff has not met its burden of proof concerning the preferential transfer issues against the remaining defendants and, consequently, the remaining counts of the complaint are dismissed.

On or about June 7, 1982, a petition for Involuntary bankruptcy was filed against the debtor, Richard Spada, a/k/a Spada Realty (hereinafter "debtor"). With no answer being filed to the petition, the Court entered an order for relief against the debtor on September 17, 1982. Thereafter, the debtor filed a Motion to Convert the Chapter 7 case to one under Chapter 11. On February 14, 1983, the Court entered an order granting the debtor relief under Chapter 11 of the U.S. Bankruptcy Code. On February 7, 1985, plaintiff filed the instant action seeking to set aside alleged preferential and fraudulent transfers and to recover property or its value. Plaintiff's cause of action rests primarily on the preferential transfer section of the Bankruptcy Code at § 547(b) which provides in pertinent part:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Plaintiff, in brief, asserts that between March 22, 1982 and March 29, 1982, and within ninety (90) days of the filing of the involuntary bankruptcy proceeding, the debtor executed and delivered certain deeds of conveyance to the various defendants and executed and delivered a mortgage to United Penn Bank (hereinafter "Bank"), all with either inadequate consideration or in fraud of creditors. On March 22, 1982, debtor delivered to the United Penn Bank a mortgage recorded in Monroe County Mortgage Book Volume 539 at page 112 which mortgage was made within 90 days immediately preceding the commencement of the involuntary bankruptcy. The plaintiff asserts that at the time of the transfer of the mortgage, the Bank was an unsecured creditor of the debtor and the transfer was on account of an antecedent debt. The defendant, after the filing of bankruptcy and more particularly on September 28, 1983 conveyed the mortgaged property and satisfied the mortgage. Plaintiff, therefore, requests the Court to avoid the mortgage as a preferential transfer and order the Bank to pay the Plaintiff all sums that the Bank received on account of the mortgage plus interest. The Bank admits a mortgage was conveyed to the Bank on March 22, 1982. The Bank further admits it was a creditor of the debtor but denies the transfer was totally on account of an antecedent debt and, in fact, new consideration was given contemporaneously with the granting of the mortgage. The Bank argues that this was sufficient consideration for the new transaction. Further, the Bank asserts at the time of the transfer the debtor was solvent and was in fact making payments to the United Penn Bank.

The plaintiff further alleged that preferential transfers of two parcels of real estate were made to Spada. Plaintiff asserts that Spada executed and delivered deeds of conveyance to defendants, Donald Griffin and Ken Maula, and that Spada was at all times acting as a straw party for the debtor and Griffin and Maula for the purposes of attempting to shield the transaction from debtor's creditors. The alleged consideration for this transfer was the forgiveness of a debt owed by the debtor to the defendants, Griffin and Maula at the time when the debtor was insolvent, within ninety (90) days of the commencement of the case and, therefore, the transfer enabled Griffin and Maula to receive a greater percentage of their claim then they would have but for the transfer. The defendants, Griffin and Maula, answer by admitting the transfer, but deny Spada acted as a straw party and that they, at all times dealt at arms length with Spada and gave valuable and adequate consideration for this transfer.

The final count of the complaint avers that the defendants, Griffin and Maula, executed and delivered a deed for the real estate in question to Paul Budick and Stephanie Budick (hereinafter "Budicks") and that the Budicks, were not good faith transferees because they knew of the debtor's bankruptcy status. The plaintiff requests the transfer of the parcel from Griffin and Maula to Budicks be vacated and that they deliver possession to the plaintiff of the deed for the parcel or in the alternative pay the plaintiff a sum equal in value to the fair market value of the property. Plaintiff requests an order directing both Budicks and First Eastern Bank to pay the costs of this lawsuit. The defendants, Budicks and First Eastern Bank, respond by admitting the dates of the transfers, but deny they were not good faith transferees or that they knew of the debtor's bankruptcy status.

In March of 1982, the debtor was obligated to the Bank on three (3) separate unsecured loans. The debtor requested the Bank to consolidate the loans and reduce the interest payments. At the time of the request, the outstanding loans were charged at an interest rate of approximately 21%. The Bank agreed to a change in terms of the agreement and accepted a second mortgage from the debtor on property located at Route 209, North 477 near Eagles Valley. The mortgage called for the interest rate to be reduced to the prime rate of interest being charged by the Bank

at that time with a ceiling of approximately 15%. The agreement also provided the debtor would be required to pay interest only during the first year of the loan with no principal payments being required during the first year. In addition, while the Bank received a second mortgage on the property, the Bank and debtor agreed that if the debtor was able to obtain financing to build a shopping center on the property, the Bank would subordinate its position to the new lender. Based upon these modifications, the Bank refinanced the three outstanding loans and recorded its mortgage on March 22, 1982. The Creditors' Committee argues the refinancing and granting of the mortgage constituted a preferential transfer under § 547(b) and that each element of that section was met by the transfer. The Bank responds it granted a contemporaneous exchange for new value as contemplated by § 547(c) and, therefore, the granting of the mortgage was not a preferential transfer.

Section 547(c)(1) provides as follows:

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange.

■ The Bank asserts the granting of the mortgage with a reduction of the interest rate enacted a contemporaneous exchange for new value. We agree and find that the granting of the mortgage by the Bank to the debtor is not a preferential transfer under the terms of § 547(b). The operative issue is whether the consolidation and modification of the loans into a new mortgage obligation constituted new value within the meaning of Code § 547(a)(2) which provides as follows:

(2) "new value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such trans-feree in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation;

■ A determination of what constitutes "new value" is a question of fact. *In re Rustia*, 20 B.R. 131 (Bankr.S.D.N.Y.1982); *In re Duffy*, 3 B.R. 263 (Bankr.S.D.N.Y. 1980). The Court in *In re F & S Cent Mfg. Corp.* at 53 B.R. 842 (Bankr.E.D.N.Y.1985) discussed the concept of new value as contemplated by § 547(a)(2) and in particular the language of that section reading "new value" ... does not include an obligation substituted for an existing obligation." The Court, at page 849, wrote as follows:

"The construction of a statute must start with its language. *U.S. v. American Trucking Assns.*, 310 U.S. 534, 542, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940); *Perry v. Commerce Loan Co.*, 383 U.S. 392, 400, 86 S.Ct. 852, 857, 15 L.Ed.2d 827 (1966). Where the language is unclear, the court must ascertain the legislature's intent in drafting the statute. *Id.*

The court finds that the legislative history supports the defendant's construction of the statute. According to the House and Senate reports, the definition of new value was merely intended to codify the usual rules of consideration. H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 372 (1977); U.S.Code Cong. & Admin.News 1978, pp. 5787, 6328; S.R. No. 95–989, 95th Cong., 2d Sess 87 (1978), U.S.Code Cong. Admin.News 1978, pp. 5787, 5873. As a rule, a promise to perform an existing obligation cannot constitute consideration. However, a modification in the terms of an existing obligation may constitute consideration. *See, e.g., In re Sepco*, 36 B.R. 279, 285 (Bankr.D.S.D.1984); *In re Arnold*, 190 F.Supp. 514, 516 (W.D.Va 1960)."

We find the facts of this case present a situation in which there was not just a substitution of an existing obligation but, in fact, a modification of an existing agreement between the parties resulting in a

new mortgage obligation. We also find that the modification of the existing agreement and new mortgage obligation constitute "new credit" as contemplated by § 547(a)(2). "New credit" was extended by the Bank by granting an approximately six point reduction in interest rate and permitting the debtor to repay interest only for the first year of the loan and further requiring the Bank to subordinate its mortgage should a lender be secured in order to build a shopping center on the mortgaged property. Additionally, the refinancing of the obligations and the reduction in the interest rate resulted in a savings per month to the debtor of approximately $150 per month. These changes in the basic terms and provisions of the pre-existing agreement are so substantial that the new mortgage cannot be considered an obligation constituted for an existing obligation. Consequently, based upon these facts we find there was a contemporaneous exchange of new value between the debtor and the Bank with the granting of the mortgage and, therefore, the plaintiff's complaint against the Bank asserting a preferential transfer under § 547(b) fails.

■ The plaintiff asserts Spada was at all times acting as a straw party for debtor and defendants, Donald Griffin and Ken Maula, for the purpose of attempting to shield from the debtor's creditors a conveyance of real estate by the debtor to defendants, Griffin and Maula, at a time whent the debtor was insolvent and within the 90 days prior to bankruptcy which enabled Griffin and Maula to receive a greater percentage of their claim but for the transfer. The facts adduced at trial show that the defendants, Griffin and Maula, purchased property from Spada and his wife, with no consideration or benefit going to the debtor, Richard Spada a/k/a Spada Realty. In fact, Griffin and Maula paid $10,000 with other consideration being the performance of certain additional work on behalf of Spada Construction Company, an entity other than the debtor, together with the cancellation of approximately $5,967 in accounts receivable owed by Spada Construction Corporation to Griffin and Maula. After a review of the testimony and evidence sub-mitted through documentation at the time of trial we find the plaintiffs' cause of action against the defendants, Spada, Griffin and Maula to be without merit. We note that the plaintiff has not relied on any other legal theory than that of a preferential transfer under § 547. The defendant, Mr. Griffin, testified extensively regarding the relationship between himself, Spada and an entity known as Spada Construction Company and we find that his testimony was very credible. In short, Mr. Griffin testified that at the time of the closing of the property all the settlement proceeds were made payable to Spada and that he did not have any reason to believe that Spada was acting on behalf of anyone but himself. He further testified that the cancellation of the accounts receivable referenced above and the agreement to do additional work were with an entity known as Spada Construction Corporation, and not Richard Spada individually as the debtor. Finally, Mr. Griffin testified he did not file a proof of claim in these proceedings against Richard Spada individually. It is important to note at this point and to stress that the plaintiff has only proceeded against the defendants Griffin and Maula under § 547 and that no fraudulent allegations under § 548 of the Code were made by the plaintiff against the defendants.

The last count of the complaint concerns the transfer from defendants, Griffin and Maula, which transfer, in effect, is two steps removed from the initial transfer from the debtor to Spada. The applicable Code section concerning this count of the complaint is § 550 dealing with the liability of a transferee of an avoided transfer. This count is rendered moot, however, because of the failure of the plaintiff to establish a preferential transfer claim against Griffin and Maula, the immediate transferors to Budicks. Consequently, we find that the count against Budicks and First Eastern Bank fails.

In conjunction with this last count, we note that defendants, Budick and First Eastern Bank filed a motion for directed verdict on May 25, 1988 and a Brief in support of that Motion. We find that this

Motion has also been rendered moot by our findings in this matter and we will direct those defendants to withdraw the Motion for Directed Verdict. We make no findings nor comment on the timeliness of this Motion.

We make the above findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

### ORDER

AND NOW, at Wilkes–Barre, this 14th day of October, 1988, it is hereby

ORDERED that judgment be entered in favor of Donald Griffin, Ken Maula, Paul R. Budick, Stephanie Budick, First Eastern Bank and United Penn Bank, and against the plaintiff, and further

ORDERED that the clerk of the court shall file this document as the judgment of the court.