**In re PONN REALTY TRUST, Debtor.**

**Bankruptcy No. 80–00312–HL.**

United States Bankruptcy Court,
D. Massachusetts.

May 9, 1980.

Stephen M. Richmond, Siri F. Boreske, Barbara T. Goff, Kaye, Fialkow, Richmond & Rothstein, Boston, Mass., for plaintiff.

Gerald D. Rosen, Richmond, Rosen, Crosson & Resnek, Boston, Mass., for defendant debtor.

## MEMORANDUM ON MOTION TO DISMISS

HAROLD LAVIEN, Bankruptcy Judge.

Debral Realty, Inc., an alleged secured creditor of the debtor, Ponn Realty Trust, has filed a motion seeking the dismissal of the Chapter 11 proceeding commenced voluntarily by Ponn Realty. The motion to dismiss fails to specify whether the movant is seeking the court's action pursuant to 11 U.S.C. § 1112 or 11 U.S.C. § 305,[1] but only states that dismissal is appropriate because "the Trust is not an entity entitled to be debtor under the Bankruptcy Code." A hearing was conducted by the court on the

---

1. 11 U.S.C. § 1112(b) provides:

Except as provided in subsection (c) of this section, on request of a party in interest, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—

    (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

    (2) inability to effectuate a plan;

    (3) unreasonable delay by the debtor that is prejudicial to creditors;

    (4) failure to propose a plan under section 1121 of this title within any time fixed by the court;

    (5) denial of confirmation of every proposed plan and denial of additional time for filing another plan or a modification of a plan;

    (6) revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title;

    (7) inability to effectuate substantial consummation of a confirmed plan;

    (8) material default by the debtor with respect to a confirmed plan; and

    (9) termination of a plan by reason of the occurrence of a condition specified in the plan.

11 U.S.C. § 1112(b).

It is important to note that although section 1112(b) enumerates various examples of "cause", pursuant to the rules of construction set forth in 11 U.S.C. § 102(3) the term "including" is not limiting and, therefore, the enumeration in section 1112(b) is not exclusive.

11 U.S.C. § 305 provides:

    (a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—

    (1) the interests of creditors and the debtor would be better served by such dismissal or suspension; or

    (2)(A) there is pending a foreign proceeding; and

    (B) the factors specified in section 304(c) of this title warrant such dismissal or suspension.

    (b) A foreign representative may seek dismissal or suspension under subsection (a)(2) of this section.

    (c) An order under subsection (a) of this section dismissing a case or suspending all proceedings in a case, or a decision not so to dismiss or suspend, is not reviewable by appeal or otherwise.

11 U.S.C. § 305.

issue of dismissal and arguments have been briefed by counsel for both parties. The court will consider each of the sections.

The motion to dismiss, first to be considered in relation to 11 U.S.C. § 1112, raises an issue of first impression under the new Bankruptcy Code, although that in itself may not be unique considering that this far-reaching enactment only became effective on October 1, 1979.

The issue is stated simply: Can Chapter 11 properly be invoked to forestall a secured creditor from foreclosing a mortgage on a one-family, debtor-occupied residential dwelling and thereby also seek readjustment of the mortgage debt?

There is apparently no provision in the Bankruptcy Code that would, on its face, prevent the filing of a Chapter 11 proceeding in such a circumstance. In the case presently before the court, a petition under Chapter 11 was filed on February 20, 1980 by Ponn Realty Trust, a business trust with transferrable shares. A foreclosure sale of the Trust's sole asset, a single-family dwelling house located at 57 Barbara Lane, Milton, Massachusetts, had been scheduled for the morning of February 21, 1980. The trustee of the Ponn Realty Trust, one Nancy Cantor, resides in the house belonging to the trust and, as was conceded at the hearing on the motion to dismiss, she has resided in the house continuously since the Trust first acquired the property in 1974. In the schedules filed by Mrs. Cantor, all of the shares of the Trust are shown as owned by Mrs. Cantor's son Stephen Cantor; the value of the house in question is listed as $150,000; the mortgage debts are listed at approximately $400,000, concededly making any equity doubtful although these mortgages are listed as contingent and disputed. The schedules further indicate that except for liability for 1978 and 1979 real estate taxes, there are no creditors other than those parties who assert claims under the various mortgages on the property. The debtor was engaged in three state court actions with the different mortgagees and assignees at the time of the filing of the Chapter 11 petition.

The moving party, Debral Realty, Inc., is the first mortgagee of the property in question and has filed both a complaint for relief from the automatic stay and this motion to dismiss. The debtor has filed an answer to the complaint and a memorandum entitled "Opposition of Debtor to Motion to Dismiss". A hearing on the motion to dismiss was conducted, however, no evidence was produced by the parties at that hearing. Although both parties attempt to argue facts in their briefs, the court does not accept these arguments as evidence of "cause" under 11 U.S.C. § 1112 and, therefore, the court's determination will of necessity be based upon the petition, schedules, statement of affairs and admissions in open court.[2] It should be noted that 11 U.S.C. § 1112, and not F.R.C.P. 12(b)(6), is the controlling standard. Although Rule 12(b)(6) and section 1112 may operate similarly in certain circumstances, they are not equivalent and section 1112 is not as limited inasmuch as it expressly contemplates the possibility of an evidentiary hearing.

In opposition to the motion to dismiss, the debtor contends that it is indeed an entity entitled to relief under Chapter 11 of the Bankruptcy Code. The debtor's analysis begins with an examination of 11 U.S.C. § 109(d).

> Sec. 109(d) Only a person that may be a debtor under chapter 7 of this title, except a stockholder or commodity broker, and a railroad may be a debtor under chapter 11 of this title.

Section 109(b) of the Code sets forth the eligibility requirements for debtors under Chapter 7.

> Sec. 109(b) A person may be a debtor under chapter 7 of this title only if such person is not—
> (1) a railroad;

---

2. The court notes that these facts were also represented to the court by counsel for the debtor at a prior hearing on a request to transfer venue of this case from Springfield to Bos-ton. Further, the court is duty bound to take judicial notice of its own records. *In re Woodmar Realty Co.*, 294 F.2d 785, 788 (7th Cir. 1961).

(2) a domestic insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, or credit union; or

(3) a foreign insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, or credit union, engaged in such business in the United States.

Hence the debtor concludes that if the debtor Trust qualifies as a "person" under the Code, then it is a proper entity for relief under Chapter 11.

The Bankruptcy Code defines "person" as including an "individual, partnership, and corporation, but does not include governmental unit." 11 U.S.C. § 101(30). Pursuant to section 101(8)(A)(v), the term "corporation" includes business trusts. 11 U.S.C. § 101(8)(A)(v). Because a business trust is a "person" within the ambit of the Bankruptcy Code, the debtor submits that its petition under Chapter 11 is proper.

The debtor seeks to buttress its argument by referring the court to case law under Chapter VI of the Bankruptcy Act. Citing *In re Roundabout Theatre Co., Inc.*, [1977] Bankr.L.Rep. (CCH) ¶ 66,545, the debtor notes that a corporation under Chapter XI of the Act did not necessarily have to be a moneyed, commercial business but could also be a business of a non-profit nature. From this, the debtor argues that the real estate owned by Ponn Realty Trust together with its desire for reorganization provide sufficient grounds for a Chapter 11 proceeding.

The court concurs with the debtor that, under the proper circumstances, a business trust such as a realty trust with transferrable shares may be a proper debtor under Chapter 11 of the Bankruptcy Code. The issue presented herein, however, is broader than the issue addressed in the debtor's arguments. In the present case, the sole asset of the debtor trust is a one-family residence occupied by the trustee and her family. The real issue presented is whether Chapter 11 is an appropriate vehicle for the adjustment of mortgage indebtedness on a single-family residence.

In interpreting the new Bankruptcy Code, it is essential to ascertain congressional intent. The debtor maintains that congressional intent is irrelevant unless the statute to be construed is ambiguous. Clearly, the Code does not explicitly exclude a Chapter 11 proceeding for a single-family residence, however, that in and of itself does not conclusively establish the converse. It is but the first step. Did Congress intend that mortgages on owner-occupied single family homes are suitable subjects for readjustment under Chapter 11? Is such a filing a good faith filing under 11 U.S.C. 1129(a)(3)?

> There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words.

*Perry v. Commerce Loan Co.*, 383 U.S. 392, 400, 86 S.Ct. 852, 857, 15 L.Ed.2d 827 (1966) (quoting *United States v. American Trucking Ass'ns*, 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940)). In *Perry*, the Court construed the language of section 14 of the Bankruptcy Act as not barring confirmation of an extension plan under Chapter XIII even though a discharge in bankruptcy had been granted within the immediately preceding six years. *Id.*, 383 U.S. at 394, 86 S.Ct. at 854. *See also Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489–90 (2d Cir. 1960). The court not only may, but must, look to the legislative history of the Bankruptcy Reform Act

to determine whether the case currently before the court is within the intended purpose of Chapter 11.

■ In the introduction to Senate Rep. No.95–989 at page 3, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5789, the following statement is made regarding the intended purpose of Chapter 11.

Chapter 11, Reorganization, is primarily designed for businesses, although individuals are eligible for relief under the chapter. The procedures of chapter 11, however, are sufficiently complex that they will be used only in a business case and not in the consumer context.

Dealing in more detail with Chapter 11, the Senate Report, at page 9, U.S.Code Cong. & Admin.News 1978, p. 5795, makes it abundantly clear that the purpose of Chapter 11 is business reorganization when it states that

Chapter 11 deals with the reorganization of a financially distressed business enterprise, providing for its rehabilitation by adjustment of its debt obligations and equity interests.

The second paragraph of this discussion of Chapter 11 indicates that the new Chapter 11 under the Bankruptcy Code replaces Chapters X, XI, and XII of the old Bankruptcy Act and further indicates the purpose of this consolidation.

A single chapter for all business reorganizations will simplify the law by eliminating unnecessary differences in detail that are inevitable under separately administered statutes.

The report continues on to state that

[r]eorganization, in its fundamental aspects, involves the thankless task of determining who should share the losses incurred by an unsuccessful business and how the values of the estate should be apportioned among creditors and stockholders.

Id. at 10, U.S.Code Cong. & Admin.News 1978, p. 5796. Clearly, the Senate intended Chapter 11 to be utilized for the reorganization of a going business.

Similarly, the House Report, H.R.Rep.No. 95–595, evinces the same legislative intent.

The purpose of a business reorganization case, unlike a liquidation case, is to restructure a business's finances so that it may continue to operate, provide its employees with jobs, pay its creditors, and produce a return for its stockholders. The premise of a business reorganization is that assets that are used for production in the industry for which they were designed are more valuable than those same assets sold for scrap. Often, the return on assets that a business can produce is inadequate to compensate those who have invested in the business. Cash flow problems may develop, and require creditors of the business, both trade creditors and long-term lenders, to wait for payment of their claims. If the business can extend or reduce its debts, it often can be returned to a viable state. It is more economically efficient to reorganize than to liquidate, because it preserves jobs and assets.

Id. at 220, U.S.Code Cong. & Admin.News 1978, p. 6179. Discussing the consolidation of the various reorganization chapters that existed under the Bankruptcy Act, the report indicates that

[c]hapter X was designed for a thorough financial reorganization of a corporation. . . . [c]hapter XI was originally designed for use by the non-public, small business . . . [t]he consolidated chapter is chapter 11 of proposed title 11.

Id. at 221–24, U.S.Code Cong. & Admin. News 1978, p. 6181.

The statements of the legislative leaders of the Bankruptcy Reform Act lend further support to the proposition that Chapter 11 is intended for use only in the business context. In the *Statement by the Hon. Dennis DeConcini, Chairman of the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, upon introducing the Senate Amendment to the House Amendment to H.R.8200*, 124 Cong.Rec. S 17406 (daily ed. Oct. 6, 1978), Senator DeConcini stated,

[c]hapter 11 thus represents a much needed revision of reorganization laws . . . [i]n summary, it has been the experience of the great majority of those who have testified before the Senate and House

subcommittees that a consolidated approach to business rehabilitation is warranted. Such approach is adopted in the House amendment.

*Id.* at S 17417–19. Similarly, in the *Statement by the Hon. Don Edwards, Chairman of the Subcommittee on Civil and Constitutional Rights of the House Committee on the Judiciary, Upon Introducing the House Amendment to the Senate Amendment to H.R.8200,* 124 Cong.Rec. H 11089 (daily ed. Sept. 28, 1978), Representative Edwards stated that

> [t]he amendment also encourages business reorganizations by a streamlined new commercial reorganization chapter, that represents an excellent compromise between the House bill and the Senate amendment. It will protect the investing public, protect jobs, and help save troubled businesses.

*Id.*

Certainly the legislative history can leave no doubt that Chapter 11 of the Bankruptcy Code was intended for utilization solely in the business setting and not in a consumer context. Indeed, other provisions within Chapter 11 itself would so indicate. For example, one of the first orders of business after the filing of a Chapter 11 proceeding is the appointment of a committee of unsecured creditors. 11 U.S.C. § 1102(a)(1). One of the express duties of the creditors' committee is to investigate the operation of the debtor's business and the desirability of the continuance of the business. 11 U.S.C. § 1103(c)(2). Similarly, the provisions of 11 U.S.C. § 1125 for an elaborate presolicitation disclosure statement and hearing are hardly consistent with a proposal for a plan involving an owner-occupied single-family residence with only mortgage creditors.

Perhaps the strongest indication that Chapter 11 is not intended to be utilized for the adjustment of a mortgage debt on a single-family residence can be found by reference to Chapter 13 of the new Code. Unlike Chapter 11, Chapter 13 undeniably

was intended for use in the consumer context and yet even in a Chapter 13 proceeding the debtor is not allowed to adjust debts secured solely by the debtor's principal residence. 11 U.S.C. § 1322(b)(2). It is instructive to recognize that in Chapter 13 Congress has created the broadest possible debtor relief proceeding which includes such debtor-oriented provisions as the first all-inclusive discharge, cram-down of secured creditors by paying only the present value of collateral over a 3-year period, and confirmation of plans without the vote of unsecured creditors, but expressly prohibited the adjustment of mortgages on a principal residence.[3] Could Congress have intended to do for the homeowner who places his residence in trust what it would not do for the homeowner himself?

It appears clear that Congress intended Chapter 11 as a business reorganization more adaptable to larger business enterprises but nevertheless available to the smaller enterprise that doesn't meet the requirements for Chapter 13 or does not wish to proceed under Chapter 13. In reference to the debtor's argument that even a nonprofit enterprise properly may invoke the benefits of Chapter 11, the court notes that although an enterprise may be nonprofit in nature, it may well retain many of the characteristics of a commercial for profit enterprise. The reorganization of an owner-occupied, single-family dwelling that produces no income and has only mortgage creditors does not have any similar characteristics and was not intended to be the subject of a Chapter 11 business reorganization.

Section 305 of the Bankruptcy Code provides an additional ground to allow the motion to dismiss. There are no creditors in this case other than the mortgagees and their assignees—all of whom appear to be disputed by the debtor. There are three law suits pending in the state court involving the debtor and these same mortgagees and assignees. Because of the disputes it is unlikely that the creditors will assent to any plan and thereby reduce, if not elimi-

---

**3.** 11 U.S.C. § 1322(b)(2) provides that a Chapter 13 plan may

(2) modify the rights of holders of secured claims, other than a claim secured only by a

security interest in real property that is the debtor's principal residence, or of holders of unsecured claims.

nate, the ability of the debtor to satisfy the requirement of one assenting class of creditors for purposes of confirmation under 11 U.S.C. § 1129(a)(10). There exists, at best, a doubtful potential for any equity in the property unless there is a favorable result for the debtor in the state court litigation. Even then, there are no unsecured creditors to benefit from such equity. The litigation could reasonably be expected to resolve all of the differences between the would-be debtor and all of its alleged mortgagee creditors without the need of the intervention of the Bankruptcy Court inasmuch as no aspect of bankruptcy law is involved. This Court should abstain even if a Chapter 11 were proper. In essence, this purported Chapter 11 proceeding is in reality a dispute between the mortgagor of a single-family, owner-occupied dwelling and the mortgagees and assignees. There are no other interested parties. The interests of both the creditors and the debtor would be better served by a dismissal allowing the state courts to proceed to determine, in accordance with applicable nonbankruptcy law, the mortgage and contract disputes. The Chapter 11 proceeding filed by Ponn Realty Trust is hereby dismissed.