**In re Arthur C. McDERMOTT, Esther L. McDermott, Debtors.**

**Bankruptcy No. 85–00565.**

United States Bankruptcy Court, N.D. New York.

Dec. 16, 1985.

---

Pelland & Sanders, Syracuse, N.Y. (David W. Pelland, of counsel), for debtors.

**MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER**

STEPHEN D. GERLING, Bankruptcy Judge.

On July 2, 1985, Arthur C. and Esther L. McDermott (Debtors) filed a Chapter 11 petition for relief from their creditors pursuant to Title 11, U.S.C. (Code). Thereafter, on September 24, 1985, a motion was filed by the United States of America, acting through the Farmers Home Administration (FmHA), requesting alternative relief as follows:

1. Dismiss the instant Chapter 11 case pursuant to § 1112(b) of the Code; or

2. Lift and modify the automatic stay under Code § 362(d)(2).

FmHA requests such alternative relief to allow it to continue its attempted foreclosure sale of the Debtors' 360–acre dairy farm.

Prior to the petition, in September 1983, FmHA received a judgment of foreclosure against the Debtors in the amount of $485,-458.18. After obtaining the judgment of foreclosure, FmHA advertised the sale of the farm and on the date of the proposed sale, November 5, 1984, the Debtors filed a Chapter 13 petition under the Code. The effect of the filing immediately enjoined the foreclosure sale pursuant to Code § 362(a), the automatic stay. Subsequently, the Debtors' Chapter 13 case was dismissed by order of the Court on the 11th of April, 1985. The order recites the dismissal was entered due to "non-payment" by the Debtors on their plan.

After the Chapter 13 case was dismissed, FmHA proceeded to re-advertise the foreclosure sale for July 12, 1985. However, the sale was again stayed as the Debtors filed the instant Chapter 11 case on the 11th of July 1985. Thereafter, FmHA filed the instant motion requesting dismissal or modification of the automatic stay. The proceeding came on for a hearing on the 22nd of October 1985 whereby the parties

Frederick J. Scullin, Jr., U.S. Atty., Syracuse, N.Y. (Gustave J. Di Bianco, of counsel), for U.S.

set forth their respective positions and the matter was submitted for decision.

The factual background of this case is somewhat involved. As noted, the Debtors filed a Chapter 13 case in early November 1984. Although the order dismissing said case specified it was for failure to pay on the plan, Debtors' attorney argues the case was actually dismissed because FmHA objected to the chapter 13 plan on the grounds the Debtors exceeded the debt ceilings for Chapter 13 eligibility. Therefore, Debtors assert the case was dismissed voluntarily. In addition, Debtors state they did not convert to Chapter 11 at that time as they were not then prepared to proceed under Chapter 11.

A debtor in a Chapter 11 case is required to file monthly operating reports. In this case, the Debtors have filed one statement which purports to cover a two month period from July 31 to September 30, 1985. There have been no other reports filed.

A plan of reorganization and a disclosure statement have not yet been filed. It has been almost five months since the case was filed; thus the exclusive period during which a debtor may propose a plan of reorganization has expired. Code § 1121(b).

FmHA asserts several grounds in support of its motion to dismiss. First, it avers the Debtors are not operating a viable or extant business concern. Second, it contends the Debtors cannot propose a feasible reorganization plan, and third, the fact that the Debtors filed successive petitions under Chapter 13 and 11, each of which enjoined FmHA's attempted foreclosure sales, evidences bad faith. Therefore, FmHA asserts the Debtors' Chapter 11 case should be dismissed pursuant to Code § 1112(b).

The Debtors deny the above allegations. Although they admit they are not currently operating the farm, they were involved in dairy farming for a number of years. Further, although the Debtors admit it is not their intention to continue the farming operations, they intend to liquidate the farm, machinery, fixtures and equipment in an attempt to pay all creditors and to protect their homestead exemption. They assert the cases cited by FmHA in support of dismissal are distinguishable. Finally, the Debtors assert their petition was not filed in bad faith, but simply in an effort to protect their rights and exemptions by selling the farm through a private sale rather than a forced sale under Chapter 7.

## DISCUSSION

Arthur C. McDermott (McDermott), one of the Debtors, admitted at an examination before trial, conducted on August 16, 1985, that the Debtors have not operated the farm since 1981. The farm is comprised of 360 acres; it is partly a dairy farm and partly a cash crop farm. Since 1981, the Debtors have leased the farm and received an annual gross rental income of $15,-000.00. In addition, McDermott works as a custodian at Ithaca College and receives an annual salary of $10,000.00.

As noted, the first ground asserted by FmHA to dismiss the Chapter 11 petition is that the Debtors are not operating the farm; therefore, as Chapter 11 is designed solely for business-type debtors, FmHA argues, the Debtors are not eligible for Chapter 11 relief.

In review of Code § 109(d), it appears on the face of the statute that Debtors qualify for Chapter 11 relief. However, FmHA cites two cases which it asserts establish Chapter 11 is not appropriate for the Debtors: *In re Moog,* 46 B.R. 466 (N.D.Ga.1985) and *In re Ponn Realty Trust,* 4 B.R. 226 (Bankr.D.Mass.1980). In *Moog, supra,* the debtor was a housewife with three mortgage debts against her real property valued at $269,000.00 and several department store obligations which totalled $7,000.00. Her debts were comprised entirely of non-business consumer type obligations.

The court issued a *sua sponte* order directing the debtor to appear and show cause why her petition should not be dismissed as Chapter 11 was not designed for a non-business debtor with wholly consumer credit type obligations. The court, after hearing the debtor's objections, ordered the Chapter 11 case dismissed on the grounds that Chapter 11 was not intended for uti-

lization in a non-business consumer context setting. *In re Moog,* 46 B.R. at 468. The court expressly adopted the holding of the court in *In re Ponn Realty Trust, supra,* stating, "Chapter 11 is not available to ... [the debtor], consumer with no business to be reorganized." *Id.*

In *Ponn Realty Trust, supra,* a Chapter 11 petition was filed by Ponn Realty Trust, a business trust with transferable shares. A foreclosure sale was scheduled of the trust's sole asset, a single family dwelling occupied by the trustee of the realty trust. The filing of the petition enjoined the sale. The debtor's schedules established that excluding liability for real estate taxes, there were no other creditors except secured claims against the dwelling. The debtor was involved in three pending state court actions against three different mortgagees at the time of filing.

The court stated that under the appropriate facts, a business trust could be a proper debtor under Chapter 11. *Ponn Realty Trust,* 4 B.R. at 229. However, as that case involved only creditors with claims against the sole asset of the debtor, the court phrased the issue as "whether Chapter 11 is an appropriate vehicle for the adjustment of mortgage indebtedness on a single-family residence." *Id.*

The court held there was no doubt Chapter 11 was intended "for utilization solely in the business setting and not in a consumer context." *Id.* at 231. The court further noted the existence of Chapter 13 as an available alternative. *Id.* Finally, the court, in dismissing the Chapter 11 case, stated that Congress "intended Chapter 11 as a business reorganization more adaptable to larger business enterprises but nevertheless available to the smaller enterprise that doesn't meet the requirements for Chapter 13 or does not wish to proceed under Chapter 13." *Id.* The court based its dismissal order on the finding that the debtor was a consumer debtor and that the only actual creditors were mortgagees against the real property in the business

trust, who most probably would not assent to confirmation of any Chapter 11 plan. *Id.* Therefore, the court dismissed the case to allow the mortgagees to pursue their respective rights in state court. *Id.* at 232.

The Debtors argue the cases cited by FmHA are clearly distinguishable as neither of the debtors therein had any business debts, nor were they ever in business. In contrast, Debtors point to their schedules which indicate all listed debts accrued from their former business. Therefore, Debtors contend they clearly qualify for Chapter 11 relief as their debts are business rather than consumer type obligations.

FmHA next contends dismissal is proper because the Debtors cannot propose a feasible reorganization plan. Although FmHA fails to delineate what sub-section of Code § 1112(b) it moves under, the Court will assume it requests dismissal under Code § 1112(b)(2). This section provides, in pertinent part, as follows:

> on request of a party in interest, ... the court may ... dismiss a case under this chapter, for cause, including—
>
> * * * * * *
>
> (2) inability to effectuate a plan; ...

The Debtors' schedule of liabilities lists three creditors: two secured creditors and one unsecured creditor. FmHA is listed as a secured creditor in the amount of $485,-000.00; Commodity Credit is listed as a secured creditor in the amount of $10,-000.00; and Rose State is listed as a $25,-000.00 unsecured creditor.[1] The Debtors' schedule of assets list the farm and two residences which are subject to the FmHA's mortgage. In addition, Debtors list as an asset, farm equipment which they value at $55,400.00. It is unclear from the schedules and papers submitted by the parties whether FmHA's mortgage covers this farm equipment. As neither party submitted a copy of the mortgage, the Court is unable to make a determination in this regard.

---

1. The Court notes the sparse information supplied by the Debtors on their schedules. Although, Debtors list two secured creditors, no collateral is listed for either obligation so the Court cannot determine what collateral is held by the two secured creditors.

The Debtors' Statement of Financial Affairs answers the question of "What business are you engaged in?" as follows: "dairy farming (previously)".

As derived from the Debtors' schedules and the EBT's of the Debtors taken after the Chapter 11 case was filed, the Debtors have the following annual expenses:

| | |
|---|---|
| Utilities | $ 1,560.00 |
| Food | 1,800.00 |
| Clothing | 600.00 |
| Newspapers & periodicals | 168.00 |
| Medical and Drug | 180.00 |
| Transportation | 2,880.00 |
| Real estate taxes | 5,100.00 |
| Fire Insurance | 360.00 |
| Auto Insurance | 360.00 |
| Health Insurance | 960.00 |
| Machinery Insurance | 600.00 |
| | $14,568.00 |

Not included in the above breakdown are incidental expenses and the debt service on the FmHA mortgage which totals $1,640.00 per month and thus, $19,680.00 per annum. Further, the Court is cognizant that if the farm is sold, a significant amount of their annual expenses will be reduced.

Based on the Debtors' annual income of approximately $25,000.00, which figure includes A. McDermott's $10,000.00 salary as a custodian and the rental income of $15,000.00 from the farm, the Debtors appear to be in grave financial condition. Further, in view of the fact Debtors intend to liquidate the farm through sale of the property, excluding the proceeds generated from the sale, the Debtors' annual income drops to $10,000.00. In spite of their apparent poor financial posture, the Debtors maintain they should be accorded additional time to attempt to propose a liquidating reorganization plan which will pay creditors.

The Debtors have attached to their papers a letter which purports to be an offer of $250,000.00 for the farm property, apparently excluding two residences located thereon. Assuming this offer is viable, in view of the $280,000.00 pre-petition arrearage owed by the Debtors to FmHA, it appears the entire amount of the sale proceeds will be paid to FmHA to partially cure the pre-petition mortgage default. Thereafter, assuming the farm is sold for this amount, the only remaining assets which Debtors may possibly liquidate are the two houses on the farm and the farm equipment.

Further clouding the viability of the Debtors' ability to effectuate a plan is that the Debtors indicate in their papers they intend to claim their homestead exemption in at least one of the houses. Finally, no evidence has been submitted concerning the value of the two houses if sold separately.

FmHA attaches a value of $305,000.00 to the entire farm. In contrast, Debtors attach a value of $485,000.00 to the farm and the farm equipment. FmHA argues that since the Debtors are proposing the farm be sold for $250,000.00, it fails to understand how such a sale will benefit anyone as both parties assert the value of the farm is greater than $250,000.00.

The Court fails to fully comprehend FmHA's position as the $250,000.00 offer expressly omits the two residences located thereon. Therefore, the Court must consider the possibility that the sale of one or both of the two remaining residences might produce enough money to fund a liquidation plan.

Finally, FmHA asserts the fact that Debtors filed successive bankruptcy petitions, each of which enjoined attempted foreclosures on the farm, evidences bad faith; therefore, it contends the Debtors' Chapter 11 petition should be dismissed.

"The filing of a bankruptcy petition on the eve of a scheduled foreclosure sale is not sufficient by itself to constitute bad faith unless it can be shown that the business entity under which the debtor is operating has no valid business purpose". *In re Route 202 Corp.*, 37 B.R. 367, 373 (Bankr.E.D.Pa.1984). In fact, bankruptcy courts have held that invoking the protection afforded by the automatic stay, through the filing of a bankruptcy petition, is not only proper but necessary to stave off foreclosing creditors to provide breathing room to effectuate a viable reorganization plan. *In re Beach Club*, 22 B.R. 597 (Bankr.N.D.Ca.1982).

The six enumerated factors set forth under Code § 1112(b) are not exhaustive grounds for dismissal. *In re Tolco Properties, Inc.*, 6 B.R. 482, 486 (Bankr.E.D.Va. 1980); *Matter of W.J. Revolt*, 22 B.R. 459, 461 (Bankr.E.D.Mich.1982). The Court has authority to consider other factors for dismissal and to invoke its equity powers, Code § 105, to ascertain "cause" for dismissal on a case by case basis. *In re Mogul,* 17 B.R. 680, 682 (Bankr.N.D.Fla. 1982); *Matter of W.J. Revolt*, 22 B.R. at 461.

FmHA contends that although courts have held the filing of a bankruptcy petition on the eve of foreclosure is not per se bad faith, the fact that Debtors filed successive petitions, each of which stayed the individual foreclosure attempts, shows a pattern of strategic filings to frustrate foreclosure.

■ The Court does not dispute that if such a pattern is demonstrated, the occurrence of successive filings could constitute bad faith. As noted, FmHA avers the Debtors' Chapter 13 case was dismissed for "non-payment by the Debtors"; however, upon review of the underlying motions papers, it appears the gravaman of FmHA's dismissal motion objected to the Debtors' eligibility to file Chapter 13 under Code § 109(e), i.e., alleging their obligations exceeded the allowable amounts of secured and unsecured debts. Nowhere in the underlying papers is anything mentioned concerning non-payment by the Debtors. Although the Court-generated dismissal notice indicated "non-payment" by Debtors, the Court agrees with the Debtors that the Chapter 13 case was not dismissed for non-payment by Debtors. Therefore, the Court finds FmHA has failed to demonstrate a pattern of strategic filings which might indicate bad faith.

■ A lack of good faith provides grounds for the Court to convert or dismiss pursuant to code § 1112(b). *In re Tolco Properties, Inc.*, 6 B.R. at 486. Good faith requires an intent to reorganize accompanied by a reasonable possibility of success; honesty and good intentions are not sufficient. *In re BBT*, 11 B.R. 224, 235 (Bankr.

D.Nev.1981); *Matter of R.W. Revolt, supra* at 462.

The Debtors have stated their intention to effectuate a Chapter 11 plan through liquidation. While the Code contemplates liquidation plans under Chapter 11, See Code § 1123(b)(4), a Chapter 11 debtor still must evidence some feasibility of effectuating a viable reorganization plan. Code § 1112(b)(2). In this regard, it has been stated, "[d]ebtors should not continue ... under the umbrella of the reorganization court beyond the point at which reorganization no longer remains a realistic undertaking, unless liquidation would proceed more expeditiously and less expensively under the control of the debtor." *In re L.S. Good and Co.*, 8 B.R. 315, 318 (Bankr.N.D. W.Va.1980). In addition, it is also clear that once rehabilitation becomes unrealistic, the debtor should not be permitted to remain under Chapter 11. *L.S. Good and Co.*, 8 B.R. at 311; *In re Lamar Estates, Inc.*, 6 B.R. 933 (Bankr.E.D.N.Y.1980).

Juxtaposed against these principles is the firmly established rule that bankruptcy courts should not precipitously terminate a Chapter 11 case by prematurely converting or dismissing the case. *In re Tracey Service Co., Inc.*, 17 B.R. 405, 409 (Bankr.E.D. Pa.1982); *In re Shockley Forest Ind., Inc.*, 5 B.R. 160, 162 (Bankr.N.D.Ga.1980). Therefore, it follows that a chapter 11 debtor should be accorded a reasonable time to prepare a plan of reorganization. *In re Neilsen*, 6 B.R. 82 (Bankr.N.D.Ala.1980); *see also, In re Tracey Service Co., Inc., supra* at 410.

In the instant case, FmHA asserts that as the Debtors have received only one allegedly viable offer of $250,000.00 for their most substantial asset, in view of the at least $280,000.00 pre-petition arrearage on the mortgage, the Debtors cannot effectuate a viable reorganization plan.

■ Whether the Court should dismiss the Debtors' Chapter 11 is a close question. As noted, although Debtors have been in and out of bankruptcy court since November 1984, when they filed their original Chapter 13 petition, they have produced

only one offer of $250,000 for their most significant asset. In addition, the Debtors' other income appears to be necessary for their personal living needs. The Court has received no information as to whether liquidation of the two houses on the farm or the farm equipment could bring additional revenue to fund the liquidation plan. The Court rejects FmHA's position that the Debtors must be dismissed because they no longer operate a viable business, because the cases cited by FmHA are distinguishable and the Debtors fail to qualify for Chapter 13 relief. However, the Court is becoming increasingly concerned by the influx of languishing Chapter 11 cases which are filed and then left with seemingly no intention for diligent prosecution.

 Moreover, the Court observes the Debtors' petition was only filed in July 1, 1985; however, their exclusive time for filing a Chapter 11 plan has expired. To date, no disclosure statement or plan have been filed with the Court; in addition, Debtors' operating reports are tardy. Therefore, the Court will direct the Debtors to file a *viable* disclosure statement and plan within ninety (90) days from the date of this order and if they fail to submit a *viable* plan and disclosure statement, upon renewal of a dismissal motion, their case will be dismissed.

In regard to the FmHA's alternative request to have the Court modify the automatic stay, the Court finds it is unable at this time to grant such relief. Although FmHA asserts the value of the farm is $305,000.00, the Court has not received a copy of any appraisal to that effect. In view of the Debtors' position that the farm, apparently including the two residences thereon, has a value of $485,000.00, there is a question of fact as to the value of the farm.

Therefore, as the burden of proving lack of equity in the subject property is on the party requesting such relief, Code § 362(g), in the case *sub judice,* the Court finds FmHA has failed its burden.

Based on the foregoing, it is hereby

ORDERED that FmHA's motion to dismiss the Debtors' Chapter 11 case be, and the same is, denied, and it is further

ORDERED that the Debtors are hereby directed to have a viable disclosure statement and reorganization plan filed within ninety (90) days of this order, and it is further

ORDERED that although FmHA's dismissal motion is denied, it is not precluded from renewing this motion if Debtors' fail to comply with the Court's direction after expiration of the ninety-day period, and it is further

ORDERED that the FmHA's motion to lift the automatic stay be, and the same hereby is, denied.